### LE CLAIR v. SWIFT et al.
### Civil Action No. 4511.

District Court, E. D. Wisconsin.
March 29, 1948.

Harney B. Stover, of Stover & Stover, all of Milwaukee, Wis., for plaintiff.

John E. Martin, Atty. Gen., Stewart G. Honeck, Deputy to Atty. Gen., and Roy G. Tulane, Asst. Atty. Gen., for defendants.

DUFFY, District Judge.

In this action plaintiff, a commercial fisherman, upon behalf of himself and 35 unnamed others allegedly similarly situated, seeks an injunction to restrain the defendants from interfering with his and their vessels and equipment while engaged in the fishing trade on Lake Michigan, and from boarding or attempting to board his and their vessels while under way in navigable waters.

The complaint alleges that plaintiff is the owner of an enrolled and licensed fishing vessel utilized on the navigable waters of Lake Michigan within the jurisdiction of this court; that defendant Swift is Director of the State Conservation Commission, which is a branch of the government of the State of Wisconsin; that said commission is the owner of the oil screw, "Barney Devine"; and that defendant Hadland is the chief game warden, and that defendants Eurs and Weborg, employees of said commission, are respectively the master and engineer of the "Barney Devine."

Plaintiff alleges that in the operation of the "Barney Devine" upon Lake Michigan defendants have followed a practice of preventing the plaintiff and the others whom he represents from following the ordinary pursuits of fishing, and threaten to continue such practice, by (a) interfering with the lifting and setting of nets; (b) boarding vessels while under way and compelling alteration of their courses; (c) seizing and attempting to seize nets which are a part of the tackle of said vessels while same are under way in navigable waters; (d) lifting nets which have been set in fishing waters and dropping them to the bottom where they lie piled up and useless, and tearing nets, and lifting and examining them with unreasonable frequency; (e) seizing or moving nets without notice to plaintiff and those he represents with the result that the crews of fishing vessels spend days in fruitless search for said nets; (f) exercising their alleged right to stop, board, and search the vessels of the plaintiff and others while such vessels are under way in navigable waters.

Plaintiff alleges that he is the owner of the oil screw, "Susie Q." and that the practices of the defendants in interfering with the navigation of his vessel and the vessels of others similarly situated have caused irreparable damage for which they have no adequate remedy at law; that the conduct of the defendants in boarding the vessels while same are under way is in violation of federal statutes; that the fish caught in Lake Michigan by the plaintiff and others similarly situated are intended to and do move in interstate commerce, and that the acts of defendants constitute unreasonable restraint upon such commerce; that unless defendants are restrained by this court, plaintiff and the others will be involved in a multiplicity of legal procedures as they are threatened with arrest.

Defendants move to dismiss this action upon three grounds: (1) That the complaint fails to state a claim upon which relief can be granted and that said complaint is wholly without equity; (2) that the persons constituting the alleged class are in fact not so numerous as to make it impracticable to bring them all before the court; (3) that this court lacks jurisdiction in that the complaint challenges the right of the State of Wisconsin to enforce its fishing regulations relating to the Great Lakes.

Although the complaint fails to disclose "a short and plain statement of the grounds upon which the court's jurisdiction depends," as required by Rule 8(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, nevertheless it is possible, by construing the complaint liberally, to spell out the basis of plaintiff's resort to this court. Plaintiff grounds his complaint upon the alleged interference by defend-

ants with his right to navigate his vessel upon the navigable waters of Lake Michigan. The complaint charges that the conduct of the defendants is in violation "of federal statutes," particularly of Sections 241 to 294 of Title 33 (complaint erroneously states Title 22), U.S.C.A., entitled, "Navigation Rules for Great Lakes and Their Connecting and Tributary Waters." In this connection the complaint refers particularly to the alleged boarding of plaintiff's vessel while under way.

Defendants' motion to dismiss concedes the truth of all well pleaded facts in the complaint, but does not concede the truth or accuracy of the legal conclusions pleaded. Federal Life Ins. Co. v. Ettman, 8 Cir., 120 F.2d 837, 839. A motion to dismiss does not admit arguments, inferences and legal conclusions. Green v. Brophy, App.D.C., 110 F.2d 539, 544. Thus, allegations that interstate commerce is not involved, or vice versa, are conclusions of law and not admitted upon a motion to dismiss. Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 57, 58 S.Ct. 466, 82 L.Ed. 646. Also, the truth of general conclusions of fact or law, stated in a complaint attacking State regulation, are not admitted by a motion to dismiss, nor do they rebut the presumption of constitutionality of State action. Pacific States Box & Basket Co. v. White, 296 U.S. 176, 184, 185, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853.

The Conservation Commission of Wisconsin was created by Section 23.09, Wis. Stats., to carry out the purposes of the Conservation Act. Among such purposes was "to provide an adequate and flexible system for the protection, development and use of forests, fish and game, lakes, streams, plant life, flowers and other outdoor resources in the State of Wisconsin." The commission was given very broad and comprehensive powers to carry out such purposes. Serious question has never been raised in the State courts as to the validity of the law establishing the Conservation Commission. The Wisconsin Supreme Court in State v. Sorenson, 218 Wis. 295, 260 N.W. 662, specifically approved of Section 29.085, Wis.Stats., which provides: "The conservation commission is hereby authorized to regulate hunting and fishing on and in all interstate boundary waters, * * *. Any act of the conservation commission in so regulating the hunting and fishing on and in such interstate boundary waters * * * shall be valid, all other provisions of the statute notwithstanding, * * *." In the Sorenson case the statute above quoted had been attacked as being unconstitutional as an unlawful delegation of legislative power. See also: Olson v. State Conservation Commission, 235 Wis. 473, 293 N.W. 262.

Section 29.02, Wis.Stats., provides: "(1) The legal title to, and the custody and protection of, all wild animals within this state is vested in the state for the purpose of regulating the enjoyment, use, disposition, and conservation thereof. (2) The legal title to any such wild animal, or carcass or part thereof, taken or reduced to possession in violation of this chapter, remains in the state; and the title to any such wild animal, or carcass or part thereof, lawfully acquired, is subject to the condition that upon the violation of any of the provisions of this chapter relating to the possession, use, giving, sale, barter, or transportation of such wild animal, or carcass or part thereof, by the holder of such title, the same shall revert, ipso facto, to the state. In either case, any such wild animal, or carcass or part thereof, *may be seized forwith, wherever found,* by the state conservation commission or its deputies." Section 29.01(1), Wis.Stats., defines the term "wild animal" to mean any mammal, bird, fish, or other creature of a wild nature endowed with sensation and with the power of voluntary motion.

Under Section 29.03, Wis.Stats., the following are declared public nuisances: "(1) Any unlicensed net of any kind * * * or any licensed net * * * set, placed, or found in any waters where the same is prohibited to be used, or in any manner prohibited by law. * * * (6) Any boat, together with its machinery, sails, tackle and equipment * * * used in violation of this chapter; * * *". Section 29.05 (6), Wis.Stats., provides: "They (the conservation commission and its deputies) shall seize and confiscate in the name of the state any wild animal, or carcass or

part thereof, caught, killed, taken, had in possession or under control, sold or transported in violation of this chapter; and any such officer may, with or without warrant, open, enter and examine all buildings, camps, vessels or boats in inland or outlying waters, * * * and other receptacles and places where he has reason to believe that wild animals, taken or held in violation of this chapter, are to be found; but no dwelling house or sealed railroad cars shall be searched for the above purposes without a warrant." Under the foregoing section conservation wardens may board boats on waters of the Great Lakes over which Wisconsin has jurisdiction and search for contraband fish and make inspections for illegal fishing gear unless for some reason the State is prohibited from exercising such power and authority because of the federal government's control over navigation.

■ It should be kept in mind that commercial fishermen, including the plaintiff, do not have any absolute right to fish in waters under the control of the State of Wisconsin. Any property right in the fish in Wisconsin waters is in the State prior to the time they may be caught.

■ It is not only the right, but the duty, of the State to preserve for the benefit of the general public, the fish in its waters from destruction or undue reduction in numbers, whether caused by improvidence or greed of any interests. As trustee for the people, in the exercise of this right and duty, the State may conserve fish and wild life by regulating or prohibiting the taking of same, as long as such action does not violate any organic law of the land. It is well established by the authorities that by virtue of residual sovereignty, a State, as the representative of its people and for the common benefit of all of its citizens, may control the fish and game within its borders, and may regulate or prohibit such fishing and hunting (Manchester v. Massachusetts, 138 U.S. 240, 11 S.Ct. 559, 35 L.Ed. 159; Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Geer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793), subject however to the absence of conflicting federal legislation. Skiriotes v. Florida, 313 U.S. 69, 75, 61 S.Ct. 924, 85 L.Ed. 1193.

■ Plaintiff argues, however, that conflicting federal legislation does exist in the statutes pertaining to navigation upon the Great Lakes. What plaintiff is, in effect, saying is that, although the State of Wisconsin may regulate the taking of fish in its waters, while plaintiff is riding about Lake Michigan in his "Susie Q" he is engaging in "navigation," and that at least during the time he stays aboard his ship and keeps moving about he is immune from inspection by the game wardens, and that any such checking or inspection would be an interference with navigation. Such contention is entirely unwarranted and unsound.

■ Plaintiff is licensed as a commercial fisherman by the State of Wisconsin. Without a State license he would not be permitted to engage in commercial fishing in Wisconsin streams or waters of Lake Michigan controlled by Wisconsin. Such licenses are not contracts and create no vested or permanent rights. Olson v. State Conservation Commission, supra, 235 Wis. at page 484, 293 N.W. at page 267. In accepting such a license to operate as a commercial fisherman plaintiff agreed to take fish in accordance with the pertinent State laws and regulations. The State statute, Section 29.05(6), gave to the commission and its deputies the right to inspect the boats of all commercial fishermen, including plaintiff, to ascertain whether or not any violation of such laws and regulations have occurred.

The right of the federal government to control navigation and the right of the State of Wisconsin to regulate fishing within its boundaries do not conflict. The United States Supreme Court in Manchester v. Massachusetts, supra, 139 U.S. at page 262, 11 S.Ct. at page 564, 35 L.Ed. 159, said: " * * * there is no necessary conflict between the right of the state to regulate the fisheries in a given locality and the right of the United States to regulate commerce and navigation in the same locality. * * *" And the Supreme Court of Wisconsin in Krenz v. Nichols, 197 Wis. 394, 402, 222 N.W. 300, 303, 62

A.L.R. 466, said: "While hunting and fishing may be an incident of navigation, it does not depend on navigation, nor does navigation depend upon the privilege of hunting and fishing. They are distinct and independent of each other, and are drawn from different sources. * * *"

■ I reach the conclusion that the representatives of the State Conservation Commission had the right to inspect plaintiff's boat, "Susie Q," while the crew was engaged in fishing on Lake Michigan in waters within the boundaries of the State of Wisconsin, and that the carrying out of such inspection was not an interference with navigation. It is true that plaintiff alleges that defendants have acted in an arbitrary and oppressive manner, but even if any such abuses have existed and similar conduct is threatened or anticipated in the future, this court would not have jurisdiction of the controversy.

An additional reason why plaintiff cannot prevail in this action was not argued in the briefs. The question is whether in an action of this kind equitable relief can be granted under the circumstances as set forth in the complaint.

■ This is an action to enjoin threatened acts by State officials to enforce State laws. It is a well established principle that courts of equity do not ordinarily restrain criminal prosecutions. Hygrade Provision Co., Inc., et al. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402; Davis and Farnum Manufacturing Co. v. Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778. "* * * No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. * * *" Beal v. Missouri Pac.

R. R. Corporation, 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L.Ed. 577. Hence, interference with the processes of the criminal law in State courts, in whose control they are lodged by the Constitution, and the determination of the questions of criminal liability under State law by federal courts of equity can only be justified in the most exceptional circumstances, and upon clear showing that an injunction is necessary in order to prevent irreparable injury. Beal v. Missouri Pac. R. R. Corporation, supra, 312 U.S. at page 50, 61 S.Ct. at page 421, 85 L.Ed. 577.

In the Beal case, 312 U.S. at page 50, 61 S.Ct. at page 421, 85 L.Ed. 577, hereinabove quoted, the court held that the danger of irreparable injury in the threatened multiplicity of prosecutions and the fact that the aggregate fines might be very large did not justify the interference by a federal court exercising equitable jurisdiction, and the court said: "* * * And in the exercise of the sound discretion, which guides the determination of courts of equity, scrupulous regard must be had for the rightful independence of state governments and a remedy infringing that independence which might otherwise be given should be withheld if sought on slight or inconsequential grounds. * * *"

■ In this connection it should be noted that allegations that enforcement of State regulation of one's business will cause irreparable damage and deprivation of "rights, liberties, properties and immunities," are in themselves conclusions of law which will not sustain the jurisdiction of equity to enjoin threatened action by State officials. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 96, 55 S.Ct. 678, 79 L.Ed. 1322.

Defendants' motion to dismiss is granted, without leave to amend the complaint since it clearly appears that, however it may be amended, it would be dismissed upon final hearing.