Frank P. De Luca, J.
FACTS
On or about the 3d day of July, 1968, a criminal information was filed with the District Court of Suffolk County wherein the defendants, Lake Ronkonkoma Theater Corporation and Michael C. Pagnotta, were charged with a violation of subdivision 2 of .section 235.05 of the Penal Law of the State of New York, in that, while acting in concert, they presented a motion picture entitled “File X For Sex ” on the 2d day of July, 1968, at the Ronkonkoma Theater, Lake Ronkonkoma, New York.
The People allege that this motion picture is obscene within the framework of the section of law under which the defendants stand charged. The People further allege that the police had a perfect right to seize the film and arrest the defendants without a warrant.
A hearing was precipitated by a motion to suppress the use of the film in evidence against the defendants at the trial, the defendants asserting that the seizure of the film was in violation of their constitutional rights. Specifically, the defendants argue that no seizure can be made unless and until a prior adversary proceeding has been held on the issue of obscenity.
In effect, the defendants do not assail the statute as it outlines obscenity, but defendants’ attack is upon the power of the Suffolk County Police Department to employ a remedial scheme, in that prior to any seizure there must be a judicial inquiry and prior adversary proceeding.
On the 2d day of July, 1968, two police officers went to the Ronkonkoma Theater in Lake Ronkonkoma, Suffolk County, New York, paid their admission to said theater and sat and witnessed the performance of the picture called “File X For Sex.” Prior to this date, one of the officers viewed the film in the latter part of June, 1968. In any event, after viewing the film on two separate occasions, and upon completion thereof, the police officers arrested the defendants herein and seized the rolls of film in their cannisters, which constituted the entire motion picture. The defendants were arraigned, and on the 8th day of July, 1968, a plea of not guilty was entered and a trial by jury requested. On the 11th day of October, 1968, the defendants made a motion for an order suppressing the use of the film in evidence against the defendants, said motion having been denied pending a hearing, which was held by this *440 court on December 18, 1968. Upon viewing the film at the hearing held by this court, it must be noted that there is a dominant theme of material involving nymphomania narcissism, homosexualism and necrophilia.
DECISION
There are few areas of the criminal law which have been more problematic to the courts and law enforcement officials than those which deal with conduct involving the publication and distribution of obscene material. The leading cases on the subject in the United States Supreme Court and the Court of Appeals of the State of New York have resulted in close split decisions.
It would appear from a reading of these cases that the main issue is one of determining just what we mean by ‘ ‘ obscenity ’ ’ and by whom, how and when such determination shall be made and applied in order to preserve constitutional rights and privileges.
To illustrate the difficulty in the area of dealing with obscenity, the Supreme Court in May, 1967 handed down three decisions, Redrup v. New York (386 U. S. 767, 770-771). The majority opinion .summarized the position held by the various Justices: “Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground or their ‘ obscenity. ’ A third has held to the opinion that a State’s power in this area is narrowly limited to a distinct and clearly identifiable class of material. Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless 1 (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,’ emphasizing that the ‘ three elements must coalesce, ’ and that no such material can ‘ be proscribed unless it is found to be utterly without redeeming social value. ’ * * * Another Justice has not viewed the ‘ social value ’ element as an independent factor in the judgment of obscenity.”
In any event, implicit in the rule is the principle that the regulation or statutes concerning obscenity does not necessarily involve any violation of the guarantees of free speech and press, protected from Federal infringement by the First *441 Amendment and from State infringement by the Fourteenth Amendment.
The following decisions support this principle: Kingsley Books v. Brown (354 U. S. 436) (involving State regulation); Roth v. United States (354 U. S. 476) (involving Federal and State regulation). (See Robertson v. Baldwin, (165 U. S. 275 [dictum applicable to State and Federal regulation]; Chaplinsky v. New Hampshire, 315 U. S. 568 [dictum to the effect that right of free speech does not include use of “ lewd and obscene, profane ” words]; Winters v. New York, 333 U. S. 507 [dictum to the effect that magazines which are lewd, indecent, obscene or profane are not within constitutional guarantee of free speech and press]; Beauharnais v. Illinois, 343 U. S. 250, rehearing den. 343 U. S. 988 [dictum to the effect that the “ lewd and obscene, the profane,” are classes of speech not entitled to constitutional protection].)
Thus, for example, in Roth v. United States (supra), the United States Supreme Court, although acknowledging that all ideas having even the slightest social importance have the full protection of the constitutional guarantees of free speech and press, notwithstanding that they are unorthodox, controversial or even hateful to the prevailing climate of opinion, ruled that obscenity is not within the area of constitutionally protected speech or press. The court said that the unconditional phrasing of the First Amendment was not intended to protect every utterance, and that the rejection of obscenity as completely without redeeming social importance is implicit in the history of the First Amendment. Rejection for that reason, it was said, is mirrored in the universal judgment that obscenity should be restrained, evidenced by an international agreement of over 50 nations, as well as by the obscenity laws of all of the 48 States and the various obscenity laws enacted by Congress from 1842 to 1956.
The real issues presented by the defendants are: First, that the arrest of the defendants and the search and seizure of the moving picture was in violation of their constitutional rights; and, secondly, that under established law in the State of New York and the United States Supreme Court, a police officer cannot make a determination as to what is obscene under any circumstances, but that such power and duty is conferred upon the courts, rather than upon the police. •
It must be first noted that the question of obscenity cannot be decided by this court upon hearing a motion to suppress evidence. In passing on this motion only the admissibility of *442 the items in question is to be determined (People v. Reshes, 39 Misc 2d 723).
As for the defendants ’ first argument, since a ‘ ‘ warrantless ’ ’ arrest was made in the case at bar, and most of the cases decided involve arrests with warrants, together with an “ incidental” search, a few broad principles of law should be stated.
The general rule is that no search is reasonable unless made under authority of a search warrant supported by probable cause. The single exception to this fundamental rule is the incidental search. The incidental search exception arises from necessity. The theory is that exigent circumstances frequently require police officers to arrest immediately without resort to an arrest or search warrant. Such exigent circumstances always exist when a crime is committed in the presence of a police officer. In such cases, with or without a warrant of arrest, an “incidental ’’search, incidental to the lawful arrest, is permitted. The point of explanation of the foregoing principles is that the Fourth Amendment, while it makes no specific mention of an incidental search, sanctions such incidental search, but under exigent circumstances (Search and Seizure, by Nathan R. Sobel, Justice of the Supreme Court of the State of New York).
The Constitution commands that there be two absolutes in an incidental search — probable cause and statutory authority to arrest. Thus, statutory authority to arrest is a first indispensable absolute to a reasonable incidental search. Probable cause is the second indispensable absolute; both must be established.
The New York State arrest statute, subdivision 1 of section 177 of the Code of Criminal Procedure, provides:
‘1 A peace officer may, without a warrant, arrest a person
‘ ‘ 1. For an offense committed or attempted in his presence, or where * * * [he] has reasonable grounds for believing that an offense is being committed in his presence.”
In the situation present, two police officers, as customers within public premises, saw and heard a film, the same film which was exhibited at the hearing. After viewing said film and hearing argument of counsel, this court finds the “ absolute ” of probable cause to have been present, and also finds the “ absolute ” of statutory authority to arrest present. Accordingly, the incidental search and seizure incidental to the lawful arrest was permissible.
It must be noted that reference to all cases supporting defendants’ position, namely, People v. Kozak (56 Misc 2d 337); People v. Rothenberg (20 N Y 2d 35) and People v. Matherson *443 (16 N Y 2d 509) refer to arrests involving warrants which failed. In the cited cases the warrants failed, and rightly so, because the courts felt that such warrants were not in compliance with the Fourth Amendment that a warrant shall‘‘ particularly ” describe the “ persons or things to be seized.” The basic defects in the warrants were that the language of the warrants delegated to the police officers executing them the function of determining from among numerous materials what is obscene and what is not obscene. All of the New York cases and Supreme Court decisions were decided where warrants were concerned and to prevent abuses of indiscriminate confiscation which existed in those cases, which is not the problem before this court. Simply, two police officers viewed a film, having knowledge of New York statutes concerning obscenity, which state as follows:
“ 235.00 Obscenity; definition of terms.
‘ ‘ The following definitions are applicable to sections 235.05, 235.10 and 235.15:
“1. ‘ Obscene.’ Any material or performance is ‘obscene ’ if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience.
“ 2. ‘ Material ’ means anything tangible which is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound or in any other manner.
“ 3. ‘ Performance ’ means any play, motion picture, dance or other exhibition performed before an audience.
“ 4. ‘ Promote ’ means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same.”
Section 235.05, Obscenity. “A person is guilty of obscenity when, knowing its content and character, he:
“1. Promotes, or possesses with intent to promote, any obscene material; or
‘ ‘ 2. Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity.
“ Obscenity is a class A misdemeanor.”
*444 It is most important to note that the New York statutes on obscenity have had incorporated in them almost the exact wording from prior Supreme Court decisions in order to formulate a proper guideline or standard to police officers. The statute is clear, concise and unambiguous and needs no prior judicial determination as to what is obscene, since the statute has already incorporated the criteria already established by decisional law in judging obscenity. The police officers did not have to sift through many items, or see many films. All they had to do is to see one film, and, having seen the film, apply the statute, which they did. After viewing the film, having probable cause and the statutory authority to arrest,' they seized the one film on sufficient cause in a place open to the public.
The court finds that the arrest was lawful and the seizure incidental to the lawful arrest and the reception of the film in evidence is lawful.
Defendants’ motion to suppress is therefore denied.