OVERSTOCK BOOK COMPANY, Inc. (a Body Corporate of the State of New York), County of Suffolk, Deer Park, L. I., New York, Petitioner,

v.

John L. BARRY, in his capacity as Police Commissioner for the County of Suffolk Police Department, Hauppauge, New York

and

George J. Aspland, in his capacity as District Attorney for the County of Suffolk, State of New York, Riverhead, New York, Defendants, Jointly and Severally.

No. 69–C–516.

United States District Court
E. D. New York.

Oct. 31, 1969.

Floyd Sarisohn, Commack, N.Y., for petitioner; Robert Eugene Smith, Towson, Md., of counsel.

George J. Aspland, Dist. Atty., Suffolk County, Riverhead, N.Y., attorney for defendants; David F. Jordan, Asst. Dist. Atty., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, pro se, etc.; Charles A. LaTorella, Jr., Asst. Atty. Gen., of counsel.

TRAVIA, District Judge.

This matter comes on by way of a motion by the plaintiff for preliminary and permanent injunctions, for declaratory judgment, for damages and for the convening of a Three Judge Court. The defendants and the Attorney General of the State of New York seek by way of cross motions to dismiss the action under F.R.Civ.P. 12(b) (1) and (6), contending that this court lacks subject matter jurisdiction (failure to raise a substantial federal question) and that the complaint fails to state a claim upon which relief can be granted.

The complaint alleges in substance that the defendants jointly and severally through their agents unconstitutionally seized substantial numbers of "presumptively protected" books, photographs and films from the plaintiff's place of business and arrested the president of the plaintiff corporation for holding obscene materials for sale.

In the prayer for relief the plaintiff seeks:

(a) a declaratory judgment that the New York Penal Law § 235.00 et seq., is unconstitutional on its face, or, is being applied unconstitutionally to the plaintiff;

(b) a declaratory judgment that the New York Code of Criminal Procedure, § 791 et seq. (search warrants), has been and is being applied unconstitutionally to the plaintiff;

(c) a preliminary injunction against seizures from the plaintiff of the material involved pending final hearing and directing the return of already seized material;

(d) a preliminary injunction of the state prosecution against the president of the plaintiff;

(e) permanent injunctions against:

(1) enforcement of the obscenity statutes;

(2) seizures without prior adversary hearings; and

(3) prosecution of the president of the plaintiff;

(f) damages; and

(g) the convening of a Three Judge Court to determine the constitutional questions.

Jurisdiction is conferred on this court for the resolution of substantial constitutional questions by 28 U.S.C.A. § 1343(3) which provides in pertinent part that the District Courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person.

"To redress the deprivation, under color of any state law, [or] statute * * of any right, privilege or immunity secured by the Constitution of the United States * * *."

The organic law which authorizes the institution of a suit is 42 U.S.C.A. § 1983, which provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The prayer for declaratory relief is founded on Rule 57 of the F.R.Civ.P. as well as 28 U.S.C.A. § 2201, and injunctive relief is sought under Rule 65, F.R. Civ.P.

Jurisdiction of this court is also invoked under 28 U.S.C.A. § 1331, this being a civil action wherein the matter in controversy arises under the Constitution and laws of the United States and exceeds the sum or value of $10,000.

█ The validity of the state statutes, or of the way they have been applied to the plaintiff, is the basis on which the defendants' actions must be justified or must fall. Assuming that 42 U.S.C.A. § 1983 is not applicable to this case, Section 1331(a) is applicable to provide jurisdiction since a federal question arises in a justiciable controversy over alleged injuries caused by the conduct claimed to violate the Constitution. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939 (1946); cf. Williams v. Riley, 280 U.S. 78, 50 S.Ct. 63, 74 L.Ed. 175 (1929).

This would seem to be the case at bar.

█ While the plaintiff may have set forth sufficient allegations to secure the jurisdiction of this court, either under § 1343 or under § 1331, dismissal, if it is proper, for failure to state a claim upon which relief may be granted is not precluded. (F.R.Civ.P. 12(b) (6)). See Bell v. Hood, supra; cf. Birnbaum v. Trussel, 347 F.2d 86 (2d Cir.1965).

█ While it is true that upon a motion to dismiss for failure to state a claim, the court must treat all allegations of fact as true, nevertheless allegations and statements in the complaint as to the law are left in question for the decision of the court. Le Clair v. Swift, 76 F.Supp. 729 (E.D.Wis.1948); United States v. Bimba, 233 F.Supp. 966, 968 (E.D.N.Y.1964) (Zavatt, Ch. J.); cf. 2A Moore's Federal Practice 2267, 2269 at n. 4.

In the Le Clair case, supra, the court upon a motion to dismiss for failure to state a claim, interpreted a constitutional question which was underlying plaintiff's claim for an injunction against state officials from boarding and seizing items from plaintiff's boat. The com-

plaint was dismissed upon a holding that the state statute was constitutional.

In the present case, plaintiff alleges that defendants are violating plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution, while *acting under color of state law.* Specifically, they state that 17,500 books, magazines, printed matter, and motion pictures were seized by defendants from plaintiff's premises; plaintiff's president was arrested, and that a criminal complaint was issued based on the obscenity laws of New York, Penal Law § 235.00 et seq. Plaintiff alleges that there was no "judicially superintended adversary hearing to determine whether the * * * publications * * * were obscene * * * prior to the seizure * * *", and that a search warrant was issued without notice to plaintiff, based on an affidavit of a police officer which had "* * * conclusions * * * [which] were * * * the sole, arbitrary, capricious, and non-judicial ad hoc conclusory assumption * * *" of the officer. Plaintiff also alleges that, by making seizures from three persons other than plaintiff, in *December 1967, October 1968 and February 1969,* defendants have "* * * established a pattern of conduct under color of state law * * * and unless restrained will continue to engage in conduct that will have the effect of depriving Petitioner and others engaged * * * in the sale and distribution of adult type materials, from their business activities."

It is upon these factual allegations, among others, that the plaintiff makes the following arguments for its cause of action:

a. *the seizures, arrest, and intended prosecution are all unlawful because* they were grounded upon a statute [Penal Law § 235.00 et seq.] which is unconstitutional;

b. *the arrests, seizures, etc., were unlawful because the statute, even if it is constitutional "on its face," could not* constitutionally be applied as a basis for a prosecution involving the particular materials which were seized, since those materials could not constitutionally be found by a court to be obscene;

c. *even if the obscenity provisions of the law were constitutional, the search and seizure warrant was unconstitutional because it was issued only upon an affidavit containing conclusory statements of obscenity and not after an adversary hearing to determine whether the materials to be seized were obscene.*

■■ The factual allegations of an unconstitutional "pattern of conduct" by seizures at various times from various persons would seem to be relevant only to an issue of whether an injunction should be issued if a claim for relief has been stated. That other materials, from other persons at other times have been seized by the defendants, and that prosecutions have been instituted, is not relevant to the question of whether or not the seizure in this case and the pending prosecution are constitutional and based on constitutional statutes.

On the question of constitutionality of § 235.00 et seq. of the Penal Law, the plaintiff claims that the statute is "void for vagueness in that it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *."

*Defendants argue that the statute is not unconstitutionally "vague" and that,* in fact, its language "tracks" the constitutional definitions of "obscenity" as laid out in recent Supreme Court opinions. Unless plaintiff means to say that the words of § 235.05(1), which provides that a person who, "* * * knowing its content and character, * * * [p]romotes, or possesses with intent to promote, any obscene material," are "vague"—and this court sees no vagueness—its objection is apparently directed to the definition of "obscene," in § 235.00(1).

This Section reads in pertinent part as follows:

"1. 'Obscene.' Any material * * * is 'obscene' if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless * * *."

In Roth v. United States, 354 U.S. 476, 491–492, 77 S.Ct. 1304, 1312, 1 L. Ed.2d 1498 (1957), the Court held that a statute punishing "obscene or indecent" material, and a statute punishing mailing of "obscene, lewd, lascivious * * * filthy * * * [or] indecent" material, although not "precise," did not fail to provide adequate warning to potential offenders of what was prohibited. Material attacked under these statutes was to be judged under standards which included as part of the test the requirement that the material must " * * * offend the common conscience of the community by present-day standards," using "* * * average person in the community * * *" as a basis for judgment. Id. at 490, 77 S.Ct. at 1312 (charge of trial judge).

Subsequently, in Mishkin v. New York, 383 U.S. 502, 506–507, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), the Court again upheld, as not unconstitutionally "vague" a New York statute establishing a criminal penalty for possessing with intent to sell "obscene" materials. The predecessor to § 235.00, former Penal Law § 1141 was involved in that case. The Court noted that the New York Court of Appeals, for the purposes of § 1141, had adopted an even narrower definition of "obscene" than had been found to be constitutional in Roth, supra. Id. at 506 at n. 4, 86 S.Ct. at 962, citing People v. Richmond County News, Inc., 9 N.Y.2d 578, 216 N.Y.S.2d 369, 175

N.E.2d 681 (1961). See, also, People v. G. I. Distributors, Inc., 20 N.Y.2d 104, 281 N.Y.S.2d 795, 228 N.E.2d 787 (1967), in which the New York Court of Appeals noted that § 235.00, not yet effective at the time of the decision, was an attempt to " * * * restate the most recent decisional rules." Id. at 106, 281 N.Y. S.2d at 796, 228 N.E.2d at 788. The Richmond County News case, supra, was quoted from in the same paragraph in which the Court purported to be defining "offensive" material under the cases and the obscenity statutes. The implication seems to be that the N. Y. courts would use the same definition under the more specific § 235.00 as was used under § 1141, so that the meaning of "obscenity" would be similarly constitutionally circumscribed.

In Bookcase, Inc. v. Broderick, 18 N. Y.2d 71, 76, 271 N.Y.S.2d 947, 218 N.E. 2d 668 (1966), the court dealt with the predecessor of § 235.20(6), which uses language similar to that used in § 235.-00(1), but without the special reference to minors found in § 235.20; the court noted that the statutory definition of "obscene" in Penal Law § 235.00(1) is essentially the same as the standards for obscenity as set forth in Memoirs v. Mass., 383 U.S. 413, 86 S.Ct. 975, 16 L. Ed.2d 1 (1966) and Roth v. United States, supra, reiterated in Redrup v. N. Y., 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed. 2d 515 (1967). Specifically, the standard set out in Roth, supra, is that material is obscene only if "* * * to the average person, applying contemporary community standards, the dominent theme of the material taken as a whole appeals to prurient interest." 354 U.S. at 489, 77 S.Ct. at 1311. This standard, though in slightly different arrangement of words, is in § 235.00(1).

Memoirs specified that to meet the test of Roth, "* * * three elements must coalesce." These are that "* * * (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the ma-

terial is patently offensive because it affronts contemporary community standards relating to the description of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977. This language is also essentially in § 235.00(1), although in different arrangement.

One could hardly say that the standard of the Constitution, as it is now read by the Supreme Court, is, in itself, unconstitutionally "vague" when it has been adopted by the legislature. It seems even harder to say that the language is unconstitutional as "vague" when even less precise language, which the language presently in question was intended to make more definite, has already been found not too "vague" for the Constitution by the Supreme Court. *Cf.* Astro Cinema Corp., Inc. v. Mackell, E.D.N.Y., 69–C–778, 305 F.Supp. 863 (Dooling, J.).

■ Plaintiff's claim that the statute is "void for overbreadth" because it sweeps "unnecessarily broadly and thereby invade[s] the area of protected freedoms in that the Statute sets forth standards at variance with and insufficient for those minimum standards prescribed by the United States Supreme Court in First Amendment matters * * *" would seem to fall on the same basis as the claim that it is "void for vagueness" must fall. The statute sets forth the constitutional standards and, if anything, is somewhat more narrowly circumscribed than what the Constitution requires. *Cf.* Mishkin v. New York, *supra*, 383 U.S. at 506, 86 S.Ct. 958.

The plaintiff complains that § 235.10 creates a conclusive statutory presumption of knowledge of "content and character" which is impermissibly overbroad.

■ Section 235.10 of the Penal Law provides as follows:

"1. A person who promotes obscene material, or possesses the same with intent to promote it, in the course of his business is presumed to do so with knowledge of its content and character.

2. A person who possesses six or more identical or similar obscene articles is presumed to possess them with intent to promote the same."

Petitioner asserts that subsection (1) of this provision fails to comply with the First Amendment on the ground that, by its terms, it creates a conclusive presumption of knowledge that a publication is obscene, in violation of Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Although this provision has not yet been considered by the New York Court of Appeals, a more reasonable interpretation than that advanced by petitioner would indicate that this statute merely allocates the burden of going forward on the issue of scienter. Thus, a defendant in a criminal case would be perfectly entitled to demonstrate that he lacked knowledge of the content and character of the material in question. Such a procedure comports fully with constitutional requirements. Smith v. California, *supra*. Moreover, it is most unlikely that the drafters of the Penal Law and the New York Legislature, both cognizant of the decision of Smith v. California, *supra,* and the previous judicial construction of the predecessor of Section 235.10(1), intended nevertheless to impose strict liability in obscenity cases. Section 1141(4) of the former Penal Law stated:

"The possession by any person of six or more identical or similar articles coming within the provisions of * * * this section is presumptive evidence of a violation * * *."

Two courts have recently looked at this provision and found it not to be unconstitutional. In Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y. July 1, 1969), Judge Pollack held that the provision was not unconstitutional because it did not create a "conclusive" presumption of knowledge, citing People v. Terra, 303 N.Y. 332, 102 N.E.2d 576 (1951), in which the N. Y. Court of Appeals held that a "presumption" in another statute was constitutional since it

did not prevent showing (by shifting the burden of going forward to the defendant) that the "presumed" facts were not true and since the presumption was based on " * * * a rational connection between the fact proved and the ultimate fact presumed * * *." *Id.* at 335, 102 N.E.2d at 578. Judge Pollack also found significant the fact that a presumption does not shift the burden of proof from the government to the defendant, but leaves the duty to show guilt beyond a reasonable doubt upon the government. Rage Books, Inc. v. Leary, *supra.* In East Village Other, Inc. v. Koota, 305 F.Supp. 1159 (E.D.N.Y., Feb. 13, 1968) (Dooling, J.), it was noted that under the prior section, § 1141, the State still had to prove guilty knowledge of the content of the material, and the presumption of innocence remained. The Court went on to say [apparently referring to § 235.10(1) (the presumption of knowledge of content and character of the materials being sold)] that "[t]here is nothing in the text of [the statute] to encourage an assumption that the New York courts have used, or will use, or could readily use the new presumption to abridge the constitutionally protected freedom of speech."

■ However, since the decisions in *East Village Other, supra,* the Supreme Court decided Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, (1969), which invalidated a presumption of knowledge of importation of marihuana from the possession of it on the grounds that " * * * a detailed inquiry into the available facts about the state of mind of marijuana users," 395 U.S. at 45, at n. 92, 89 S.Ct. at 1553, indicated that the presumption of knowledge was not " * * * more likely than not to flow from the proved fact on which it is made to depend." *Id.* at 36, 89 S.Ct. at 1548. *Leary* suggests that inquiry must be made into the likelihood of the fact presumed (here, knowledge of content and character of books) to arise in occasions when the proved facts (here—when proven—promotion of obscene material, or possession with intent

to promote, in the course of the possessor's business) are shown, although the presumed fact may not always exist where the predicate facts have been shown. In People v. Bunis, 23 Misc.2d 156, 198 N.Y.S.2d 568 (City Court, Buffalo, 1960), the Court dismissed the charges against the defendant, saying that there was " * * * not one mention as to this defendant's knowledge of the obscene nature * * *" of the material. 198 N.Y.S.2d 572. The implication of that Court's holding seems to be that the requisite knowledge was not in fact present; thus, the presumption of § 235.10(1) may not generally be related to the proven facts as required under *Leary.* However, even if it were shown that the presumption is not generally valid, the present case is particularly inappropriate to raise the issue.

■ To arrest some one, a police officer does not have to determine first that the law under which he is acting will later be found to be constitutional by a court. *Cf.* Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288. In this case, this is particularly relevant since to arrest or to search and seize, the police only need "probable cause" [Amendment IV], and the entire case does not at that early stage have to be established in its entirety. Thus, in order to arrest or to search and seize the police need not determine whether there is "knowledge of * * * content and character" of books and other materials which the defendant holds. The proof required thereafter in a trial will be ruled upon in accordance with the rules of evidence and the pertinent statutes. Thus, even if the presumption were unconstitutional, no damages could possibly be given against the police commissioner, nor could an injunction against prosecution be issued, for an arrest, solely because an unconstitutional presumption in the law might later be used at trial.

The allegations of the police undercover detective upon which the warrant was based at least suggest that plaintiff by its employees had knowledge of the con-

tent of the materials sold. Paragraph 27 of the affidavit reads in part:

"On March 21, 1969, the magazine 'Ups and Downs', #2, was inspected by me and notes made of its contents. This magazine was brought to my attention by Lucille Schneider [plaintiff's bookkeeper] who proceeded to open the magazine and show its contents to your deponent. Lucille mentioned that this particular magazine is selling very well due to the fact that there is a Negro depicted in the entire magazine."

Paragraph 28 reads in part:

"On March 21, 1969, the magazine 'Denmark', volume 1, 2, was inspected by me and notes made of its contents. Lucille Schneider showed this magazine to me also."

Paragraph 29 reads in part:

"On March 21, 1969, 'In Scene' was inspected by me and notes made of its contents. This book was also brought to my attention by Lucille Schneider. * * * I stated to Lucille Schneider that I thought the persons depicted in the magazine were particularly good looking and Lucille said she agreed and said that she thought the layout was particularly well done."

In addition to the above, the affidavit indicates that the affiant policewoman had been employed for two weeks by the plaintiff and, if the information in the affidavit is accurate, it is obvious that the content and character of the materials were known not only by the policewoman employee but by the other employee who brought material to attention of the policewoman. The conduct alleged here is "* * * the sort of 'hardcore' conduct that would obviously be prohibited under any [limiting] construction [of the statute]." Dombrowski v. Pfister, 380 U.S. 479, 491–492, 85 S.Ct. 1116, 1124, 14 L.Ed.2d 22 (1965).

Plaintiff complains that the presumption in § 235.10(2) (possession of six or more identical or similar obscene materials presumed to be with intent to promote) is unconstitutional as being "over-broad" because it could be applied to private as well as to commercial possession.

Insofar as the presumption could be used to convict a person who only privately possessed obscene materials, without actually intending to make commercial use of them or to "promote" them, as defined in § 235.00(4), but who possessed the materials only for his personal use, it might be unconstitutional for its "overbreadth." Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L. Ed.2d 542 (1969) (personal and private possession of obscene matter cannot constitutionally be made a crime). "Over-breadth" is a term used to describe a situation where a statute proscribes not only what may constitutionally be proscribed, but also forbids conduct which is protected, e. g., by the First Amendment's safeguards of freedom of speech and press. Cf. Zwickler v. Koota, 389 U.S. 241, 244, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, supra, 380 U.S. at 490–491, 85 S.Ct. 1116. But as it is presently phrased, the presumption is unlikely to "overbroadly" affect protected "* * * primary activity of citizens. * * *." Hanna v. Plumer, 380 U.S. 460, 474, 85 S.Ct. 1136, 14 L.Ed.2d 8 (Harlan, J., concurring). Nor are the New York courts likely to interpret the presumption so as to include within its scope conduct excluded from criminality by Stanley v. Georgia, supra.

The complaint on this point fails to present any substantial federal claim. Petitioner here does not allege that the criminal proceedings were prompted by bad faith, a factor regarded as extremely crucial in Dombrowski v. Pfister, supra. The complaint concedes in paragraphs 13 and 14 that petitioner devotes a substantial part of its business to the retail distribution and sale of "adult-type" publications and materials such as those which were seized. It is hardly surprising then, that its employee was subjected to arrest. Such a fact is a normal risk, incidental to the

particular nature of the petitioner's business. Here, too, the alleged conduct complained of by the State is "hardcore" and clearly within the statute no matter how limited its construction. *Id.* 380 U. S. at 491–492, 85 S.Ct. 1116.

■ With regard to the search procedures, affidavit and warrant, the plaintiff claims that the warrant provisions of the N.Y.Code of Criminal Procedure § 791 *et seq.*, are unconstitutional because they do not provide adequate safeguards for the plaintiff and do not provide for a prior adversary hearing. However, the warrant provisions neither provide for nor forbid a prior adversary hearing before a warrant for seizure of obscene materials may be issued. Instead, the provisions provide that a warrant may be issued if the property "* * * is in the possession of any person, with the intent to use it as the means of committing a public offense * * *," § 792, and, that the warrant could only be issued on probable cause, § 793, after a magistrate has examined "* * * the complainant and any witnesses he may produce * * *." § 794. This does not seem to prevent the holding of an adversary hearing, perhaps under § 794, before the warrant is issued to determine that the materials were obscene and therefore subject to seizure under a warrant. Thus, the statutory provisions do not seem to be contrary to any possible constitutional requirement of a prior adversary hearing.

■ Plaintiff has argued that the affidavit upon which the warrant was issued, "* * * and the conclusions found therein were and are the sole, arbitrary, capricious, and non-judicial ad hoc conclusory assumption of the * * *" police detective that the materials were obscene. (Complaint, ¶ 12, p. 8). This is apparently an attack on the basis for the search warrant, seeking to bring this case within Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), where the complaints upon which the warrant was issued only said that the defendant "* * * 'kept for the purpose of [sale] * * *, obscene * * * publications * * *.' No copy of any magazine on [the] list or purchased * * * at the newsstands, was filed with the complaint or shown to (the) * * * judge." *Id.* at 722, 81 S.Ct. at 1711.

However, in the present case, although no examples of the material were presented to the judge, the affidavit shows a good attempt not to be conclusory, but rather to describe graphically to the Judge what the police officer saw. All one needs to do is to take any paragraph at random, and it will suffice to show that the affidavit was made with specificity. *Compare* Schackman v. Arnegergh, 258 F.Supp. 983, 987, 991–992 (C.D.Calif.1966), *appeal dismissed,* 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967).

The affidavit does not conclude that the materials were obscene. It only describes the materials. From the descriptions in the affidavit, if true, some of the publications, would appear without question to be "hard-core pornography." Based upon the policewoman's affidavit, a judge of the Suffolk County Court issued a warrant, particularly describing certain publications which were to be seized. The warrant, however, did not specifically state the number of copies of each publication to be seized, nor did the warrant say that "all" of the copies of any one publication were to be seized.

Plaintiff claims that the seizure was unconstitutional because there was no prior adversary hearing. Approximately 17,500 books, magazines, and other materials were seized. According to the police receipt appended to the complaint, the materials were seized in numbers varying from a few (e.g. 1 volume of "Peaches"; 17 volumes of "Two"; 22 volumes of "Intercourse") to many (e.g. 42 cartons, 250 in each, of "Tryst", 6 cartons, 250 in each, of "Two," Vol. 1, No. 1).

The seizures of great numbers, amounting to a suppression of the materials, contravenes the First Amendment. *Cf.* Marcus v. Search Warrants, *supra* ("Approximately 11,000 copies of 280 publications, principally magazines but also some books and photographs, were seized * * *." 367 U.S. at 723, 81 S. Ct. at 1711); Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L. Ed.2d 809 (1964) (1,715 copies of 31 titles seized). Both of these cases held that at least when large numbers of allegedly obscene materials are seized by the State, a prior adversary hearing must be held to determine whether the materials seized are, in fact and law, obscene. *Compare* Bethview Amusement Corp. v. Cahn, 2d Cir., Oct. 6, 1969, 416 F.2d 410 (motion picture similar to large quantity of books; adversary hearing before seizure required).

In the *Bethview* case, the Court of Appeals said that

"We are not called upon to decide whether the film was in fact obscene. The only issue raised is whether the protection provided by the first amendment required that appellees be given an opportunity to be heard on the issue of obscenity before the film could be seized by the police. We hold that the first amendment as applied to the states by the fourteenth requires an adversary hearing in such a case.

There can be no doubt that a motion picture, like a book, is entitled to the protection of the first amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501–503, 72 S.Ct. 777, 96 L. Ed. 1098 (1952); Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); United States v. A Motion Picture Film, 404 F.2d 196 (2d Cir.1968). That protection includes the requirement that an adversary hearing be provided before the allegedly obscene works can be seized.

'We therefore conclude that in not first affording * * * an adversary hearing, the procedure leading to the seizure order was constitutionally deficient. * * * For if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of non-obscene books.' A Quantity of Books v. Kansas, 379 U.S. 205, 210–11, 213, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). See also Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Potwora v. Dillon, 386 F.2d 74 (2d Cir.1967).

Appellants argue that there is a difference between the seizure of a large number of books and the seizure of a single print of a motion picture film. We do not agree that the difference is legally significant. We are told that the Bethview Theater has 300 seats. Assuming half of them to be occupied for four showings of a film each day for a week, over 4000 individuals would see the film. Preventing so large a group in the community from access to a film is no different, in the light of first amendment rights, from preventing a similarly large number of books from being circulated.

We are supported in our view that the rule of the *Kansas* case is equally applicable to seizure of films by the recent decisions of sister circuits in Metzger v. Pearcy, 393 F.2d 202 (7th Cir.1968) and Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir.1969). In *Metzger* the court said at p. 204:

'This analysis [of the Supreme Court cases] requires this court to hold unconstitutional the seizure of the film "I, a Woman" since there must be an adversary hearing on the issue of obscenity before a movie can be constitutionally seized.' "

The seizure in the present case was of a substantially greater number of materials than were involved in the seizures in Marcus v. Search Warrants, *supra*. That of some particular titles only a few items were taken does not change the character of this mass seizure.

■ This Court concludes that these seizures were improper and contrary to the requirement of the Constitution of a prior adversary hearing.

If the seizure has been improper, then the appropriate remedy would be to order the return of the materials which were improperly seized. In the Bethview Amusement Corp. v. Cahn, *supra*, the Court stated:

"The appellants contend that a print of the motion picture is needed for purposes of prosecution. There are a number of ways in which this can be accomplished without seizure of the film. The court can direct that a print be made reasonably available to the prosecution; a subpoena duces tecum can be used.

Finally it is suggested that unless the police or other local authorities have actual possession of the film pending the required adversary proceeding, the distributor may take advantage of the delay, for example, by shipping the film out of the jurisdiction or by cutting out the offending scenes. If there is a real threat of such activity it can be controlled by an ex parte restraining order."

■ Although this Court has concluded that the seizures in this case were improper, it grants to the defendants the right to submit a proper restraining order in accordance with the suggestions made in Bethview Amusement Corp. v. Cahn, *supra*.

Plaintiff seeks an injunction against the criminal prosecution.

■ ■ As Judge Dooling suggests in Astro Cinema Corp. v. Mackell, 69–C–778, 305 F.Supp. 863 (Aug. 19, 1969), and as this Court did in the *Bethview* case, denial of an injunction here would seem to be appropriate. Being improper, the seizure may be remedied, *e.g.* by an order by this Court for the return of the materials. Any other infirmities in the proceedings in the State courts may be determined upon review. Criminal penalties for obscenity are not, in themselves, forbidden.

This Court will not condone trafficking in pornography or obscene material that is obviously pornographic since it strikes at the very moral fiber of society if it should get into the hands of the unscrupulous and that, in this case, is most probable since the plaintiff deals in the wholesale trade of the materials involved.

■ As to the question of whether a three judge court should be convened, it is the judgment of this Court that such an application should be denied for the want of a substantial question regarding the constitutionality of New York Penal Law § 235.00 *et seq.*

Title 28 U.S.C. § 2281 provides as follows:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute * * * shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges."

■ It is settled that Section 2281 does not require the convening of a three-judge court when the claim that a statute is unconstitutional is patently insubstantial. *See* Swift and Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L. Ed.2d 194 (1965); Ex parte Poresky, 290 U.S. 30 (1933); Lamont v. Commissioner of Motor Vehicles, 269 F.Supp. 880 (S.D.N.Y.1967), *aff'd* 386 F.2d 449 (2d Cir.1967). For reasons which have already been made clear in this memorandum, petitioner's attack upon Sections 235.00 through 235.15 of the New York Penal Law and Sections 792 and 793 of the New York Code of Criminal Procedure is frivolous and fails to raise any valid constitutional issue.

This Court concludes, therefore, that the plaintiff's motions are denied, except the motion seeking the return of the seized material and as to that motion

this Court directs that an order be submitted in accordance with the suggestions made above unless the attorneys for the respective parties can stipulate to the material necessary for the prosecution of the case now pending in the State Court that may be retained by the defendants. The motions of the defendants to dismiss are granted, except as stated with regard to plaintiff's motions.

Submit order and judgment in accordance with this decision on notice to the opposing counsel.