William E. Bingel, J.
The defendant is charged with violating the obscenity statute (Penal Law, § 235.05) in that, knowing its contents and character, he promoted and possessed, with intent to promote, certain obscene motion picture films.
This prosecution was initiated by an arrest by a police officer, executed without a warrant, after he had viewed a certain motion picture film. The film was not seized nor was there any prior judicial scrutiny thereof'.
Defendant contends that absent prior judicial scrutiny, the arrest is unlawful and fatal to the prosecution. On the other hand the People contend that the film consisted of hard-core pornographic material, and that the officer having viewed the same had probable cause to arrest the defendant without a warrant. The People argue further that since there was no seizure of the film prior judicial scrutiny is not required.
A hearing was held on the question of probable cause. At that hearing the police officer testified that he visited the Metropolitan Theater on 14th Street in this county on a certain date *668 and time. The marquee over the theatre entrance advertised six short subjects.
Upon paying a $5 admission fee, the officer entered and saw a motion picture on the screen in color entitled “ Anna’s Banana ”. The film ran 20 minutes. Its opening sequences depicted a female masturbating by use of a cucumber. A male thereafter entered and engaged the female in a conversation about renting a room or sharing premises, in answer to a newspaper advertisement. Thereafter, both got on a bed and engaged in fellatio and cunnilingus. This was followed by an explicit act of sexual intercourse, toward the end of which, the male withdrew his organ and ejaculated in full view on the screen.
This testimony is not controverted. The film itself displayed no cast of characters, no name of a producer, director and no film 1 ‘ credits ’ ’.
The court finds that this motion picture as described constitutes hard-core pornography and is a typical “ stag ” film. This type of material has long been condemned (People v. Richmond County News, 9 N Y 2d 578). It is autoptically obscene. (Womack v. United States, 294 F. 2d 204, cert. den. 365 U. S. 859; United States v. Wild, 422 F. 2d 34, cert. den. 402 U. S. 986.)
The question presented on defendant’s motion to dismiss is whether a police officer viewing the film in question had probable cause to arrest without a warrant for violation of section 235.05 of the Penal Law where there has been no prior judicial scrutiny of the film and where there has been no seizure.
The answer to this question is in the affirmative. Violation of section 235.05 of the Penal Law is an offense — a class A misdemeanor (Penal Law, §§ 10.00, subds. 1, 4; 70.15, subd. 1). The Code of Criminal Procedure (§ 177, subd. 1) authorizes the arrest of a person by a police officer without a warrant for an offense committed or attempted in his presence, or where the officer has reasonable grounds for believing that an offense is being committed in his presence. (See, also, CPL 140.10, subd. 1, par. [a], eff. Sept. 1, 1971.)
In testing for the existence of probable cause the ‘ ‘ question always is: what in the common judgment of reasonable men would be regarded as good, sound cause, remembering that we seek only probable, not absolute cause? ” (People v. Marshall, 13 N Y 2d 28, 34.) See, also, Brinegar v. United States (338 U. S. 160, 175; People v. Valentine (17 N Y 2d 128).
Mere suspicion is not enough to furnish probable cause for an arrest without a warrant (People v. Graf, 59 Misc 2d 61). On the other hand, proof of the existence of probable cause is *669 pot equated with proof of the existence of facts sufficient to convict. (Overstock Book Co. v. Barry, 305 F. Supp. 842, 850); People v. Logan, 39 Misc 2d 593.)
As the court stated in Womack v. United States (supra) the material shown in the instant motion picture is obscene by any standard.
Accordingly, probable cause existed to believe that a violation of section 235.05 of the Penal Law was being committed in the officer’s presence.
Because of the protection afforded by the First Amendment, the courts have tread lightly with respect to obscenity where a medium of expression is involved. Motion pictures come within its ambit (United States v. Paramount Pictures, 334 U. S. 131, 166).
The rationale behind this caution enunciated in Marcus v. Search Warrant (367 U. S. 717) is to prevent the police from acting as the censors of the community and to. permit the public to have access to material which is not obscene (Bantam Books v. Sullivan, 372 U. S. 58). Obviously, as the court noted in Bantam Books, in this area, arrests, executed without prior judicial scrutiny would inhibit the distribution of some non-obscene material.
The thrust of Marcus, Bantam Books, and the other leading cases in this area (see, also, A Quantity of Books v. Kansas, 378 U. S. 205; Bethview Amusement Corp. v. Cahn, 416 F. 2d 410; Tyrone, Inc. v. Wilkinson, 410 F. 2d 639) is to prevent suppression of constitutionally protected material. These cases, as well as those cited by defendant involve seizures from which suppression results.
Where there has been no seizure, as here, there can be no suppression. Even in those cases where an unlawful seizure of a motion picture had taken place — unlawful because there had been no prior adversary proceeding to determine the film’s obscenity — (Bethview Amusement Corp. v. Cahn, supra; Tyrone, Inc. v. Wilkinson, supra), the courts nevertheless held that the petitioners were not immunized against criminal prosecution. (Kingsley Books v. Brown, 354 U. S. 436; People v. Hall, 60 Misc 2d 850; Tyrone, Inc. v. Wilkinson, supra.)
And thus too, where probable cause exists to arrest for displaying an alleged hard-core motion picture film to the public an arrest without a warrant is lawful. There is no need for prior judicial scrutiny to validate such an arrest. The fact that a motion picture film is involved rather than a stage performance does not change the rule. (Bennett v. California, cert. den. 389 *670 U. S. 985.) Nor does the fact that such arrest may inhibit others from displaying this type of film make the arrest unlawful. This rule enunciated by a three-Judge Bench in Milky Way Prods, v. Leary (305 F. Supp. 288, 296-297) was affirmed by the Supreme Court (397 U. S. 98). See, also, United States v. Fragus (428 F. 2d 1211). In Fragus, the court, sua sponte, without changing its result, supplemented its original opinion when Milky Way was affirmed, holding that the panderer of gross smut, i.e., hard-core pornography, may be arrested under ordinary criminal process without a prior judicial determination of the obscenity of the material he peddles (Fragus, at p. 1212). To the same effect see Overstock Book Co. v. Barry (supra); People v. Lake Ronkonkoma Theater (59 Misc 2d 438); People v. Pomerantz (N. Y. L. J., Aug. 11, 1971, p. 10, col. 5).
Accordingly, the motion to dismiss is denied.