Bernard Tomson, J.
The defendants, Robert Quentin and John Garcia, have been charged in a three-count information with possession and promotion of an obscene brochure in violation of section 235.05 of the Penal Law, endangering the welfare of a child in violation of section 260.10 of the Penal Law, and criminal solicitation in the third degree in violation of section 100.00 of the Penal Law. The defendants move for leave to withdraw their not guilty pleas and interpose a demurrer to the information on the ground that it does not state facts sufficient to constitute a crime.
The brochure in question, although objectionable to the majority of its readers, would appear to be obscene primarily because of the cover which depicts a naked male and female in the act of sexual intercourse superimposed upon a map of the United States. The actions of the couple are not left to the imagination; the genital organs of the male are clearly depicted in the act of penetrating the vaginal orifice. No claim of artistic or literary merit is made for the cover. If there is any social message it is obscure and a study of the balance of the brochure does not enlighten. The cover picture is unrelated to the balance of the pamphlet. It is obviously used only to attract attention and in so doing appeals to the prurient interest.
The rest of the brochure is worthy of note. The inside front *602 cover concisely describes the philosophy of the defendants. In part it reads: ‘ ‘ America is carnivorous. She eats the world for dessert. Behind slick pictures of pretty-suburban-middle-churchgoing-family lie hamburgers seasoned with napalm, race crimes too brutal to recall, cultures plundered, and triviality elevated into a way of life * * *. The rich are rich because they are thieves and the poor because they are victims, and the future will condemn those who accept the present as reality. Break down the family, church, nation, city, economy * * *. Subversiveness saves us * * * our professors are spies; let us close the schools and flow into the streets * * *. Grow hair long and become too freaky to fit into the machine culture. What’s needed is a generation of people who are freaky, crazy, irrational, sexy, angry, irreligious, childish and mad: people who burn draft cards, burn high school and college degrees: people who say: ‘ To hell with your goals.’; people who lure the youth with music, pot and acid: people who re-define reality, who re-define the normal; * * * The white youth of America have more in common with Indians plundered, than they do with their own parents. Burn their house down, and you will be free. ’ ’
This is followed by a paragraph entitled “ How to make a fire bomb ”, and a recipe for Tryptamine, a psychedelic agent. The recipe ends with the statements: “ This last (Tetrahydrofurane) is a very powerful reducing agent; wear safety glasses, add very cautiously, and perform this step with ventilation, away from flames (H2 is evolved). The yield is about 40 grams of DMT, in tetrahydrofurane solution. This cannot be drunk or injected, but may be smoked by sprinkling on mint or cannabis leaves and letting the solution evaporate. It’s evaporated when it starts smelling like DMT instead of tetrahydrofurane.”
The thrust of the defendants’ argument is directed at the definition of obscenity. They urge that the brochure, when taken as a whole, does not appeal to the prurient interest. The difficulty with this position is that the copulating couple on the cover does not appear related to the balance of the material. The social redeeming value, if any, of the brochure cannot shield unrelated obscenity.
The cover of this publication is exploited entirely on the basis of shock and appeal to a prurient interest. Cf. Ginzburg v. United States (383 U. S. 463) where the majority, through Mr. Justice Brennan, indicated that the question of obscenity may include consideration of the setting in which the accused publication was presented as an aid to determining the question of obscenity. The court there said (pp. 475-476): “ ‘ The nature *603 of the materials is, of course, relevant as an attribute of the defendant’s conduct, but the materials are thus placed in a context from which they draw color and character. A wholly different result might be reached in a different setting. ’ Roth v. United States, 354 U. S. at 495 (Warren, C. J., concurring). It is important to stress that this analysis simply elaborates the test by which the obscenity vel non of the material must be judged. Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation. ’ ’
The cover of this pamphlet is obscene by any standard and has no value other than to draw attention to and arouse interest in the publication by exploiting an appeal to the prurient interest. (See Roth v. United States, 354 U. S. 476; Alberts v. California, 354 U. S. 476; Manual Enterprises v. Day, 370 U. S. 478; Ginzburg v. United States, 383 U. S. 463; Mishkin v. New York, 383 U. S. 502 and Memoirs v, Massachusetts, 383 U. S. 413 [Fanny Hill]; Redrup v. New York, 386 U. S. 767; People v. Richmond County News, 9 N Y 2d 578.)
The Legislature, in enacting the new Penal Law (defining obscene) in section 235.00 adopted a less stringent test than the “hard-core pornography ” test found in the cases. The test in the statute makes the matter obscene if: “ (a) considered as a whole, its predominant appeal is to prurient shameful or morbid interest in nudity, sex, excretion, sadism or masochism; and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value.”
The cover of the brochure is “ hard-core pornography ” and is obscene, as defined by section 235.00 and the cases.
However, counts one and two are pled in the conjunctive and the alternative simultaneously and do not adequately inform the defendants of the acts with which they are charged.
An information “must contain facts setting forth the nature of the charge against the defendant and the acts constituting it, so as to enable the defendant to prepare for trial and prevent his being tried again for the same offense * * *. The information must charge the offense in plain, concise, intelligible language, stating facts without conclusions * * *. It must
describe or identify the acts or facts constituting the offense with accuracy, exactness and precision ”. (People v. Schildhaus, 10 Misc 2d 641, 642.) (See, also, sections 50,05 through 50.50 of *604 the proposed New York Criminal Procedure Law, particularly section 50.15.)
Obviously it is improper to charge alternatives in an information. A defendant may not be accused of having done one thing or another. Therefore, when a statute contains alternatives, one or the other should be pled, not both, unless the defendant is accused of doing both prohibited acts, in which case ‘1 and ’ ’ alone should be used. Therefore, counts one and two are dismissed with leave to the District Attorney to file a new information.
It is noted that in the second count the People have chosen to charge the defendants with violating section 260.10 of the Penal Law, ‘‘ Endangering the welfare of a child ’ ’. The underlying facts, if alleged properly, may very well spell out a violation of this section. However, it would appear that the facts charge the defendants with violating section 235.21, 1 ‘ Disseminating indecent material to minors ”. Both sections are class A misdemeanors. Section 235.21 of the Penal Law was obviously designed to cover the situation at bar and its predecessor section 484-h of the old Penal Law has been upheld by the United States Supreme Court in Ginsberg v. New York (390 U. S. 629).
Count three (not so labeled) alleges a violation of section 100.00 of the Penal Law which is criminal solicitation in the third degree. It charges that the defendants violated the section in that they attempted to cause persons to whom a brochure was distributed to possess a chemical compound known as DET and DMT which violates section 229 (429) of the Mental Hygiene Law. The brochure on one of its pages gives a formula for making a fire bomb. Below that is also a formula for making both DET and DMT. On the page with the formula is no other solicitation, request or advocacy concerning the drugs. The formula taken alone appears to be such as would be found in a chemistry book or encyclopedia. It is clear that section 100.00 was intended to cover a situation where a particular person importunes another specified individual to do a specific act which constitutes a crime. The purpose was to hold the solicitor criminally responsible even if the- one solicited fails to commit the act. It does not appear that section 100.00 was designed to cover a situation where the defendant makes a general solicitation (however reprehensible) to a large indefinable group to commit a crime. (See “ Commentary ” following section 100.00 of Penal Law in McKinney’s Cons. Laws of N. Y.)
The defendants ’ motion is granted and all counts of the information are dismissed with leave to the District Attorney to file a new information.