**ASTRO CINEMA CORP., Inc., John Justin and Jess Rockman, Plaintiffs,**

v.

**Thomas J. MACKELL, District Attorney of Queens County, Defendant.**

**No. 69 C 778.**

United States District Court
E. D. New York.

Aug. 19, 1969.

864

Eleanor Jackson Piel, New York City, for plaintiffs.

Mortimer Sattler, New York City, (Louis J. Lefkowitz, Atty. Gen., of counsel) for defendant.

MEMORANDUM and ORDER

DOOLING, District Judge.

Plaintiffs had been concerned during the week commencing May 4, 1969, in the public exhibition of a motion picture film entitled "Odd Triangle" at the Hollis Cinema Theatre (operated by the corporate plaintiff). By May 7, 1969, plaintiffs had interrupted their planned one-week run of "Odd Triangle," and they were exhibiting another film, "The Singles." That fact was evident from the marquee advertising. Nevertheless, on May 7, 1969, the print of "Odd Triangle" was still in the theater, and on that day plaintiff Rockman was arrested on an obscenity charge under Penal Law, McKinney's Consol.Laws, c. 40, § 235.05, and the print of "Odd Triangle" was seized under a warrant issued pursuant to Code of Criminal Procedure § 791 et seq. When the present action was commenced and the present motion made, plaintiff Rockman was awaiting further hearing in Queen's Criminal Court on the misdemeanor charge of Section 235.05. It appears that another print of the "Odd Triangle" was seized in Nassau County from a different theater on the preceding night and it is indicated that the Nassau arrest and seizure influenced plaintiffs to interrupt their showing of the film.

By the present action plaintiffs seek the return of the print of "Odd Triangle," an injunction against the state prosecution, and a declaration that Penal Law § 235.05 is invalid in terms and as applied to plaintiff in connection with Code of Criminal Procedure § 791 et seq. Plaintiffs now move for a preliminary injunction requiring return of the film, and restraining the defendant from prosecuting plaintiffs and others similarly situated and from seeking to enforce Penal Law § 235.05. A three judge court is sought under 28 U.S.C. § 2281. The complaint suggests that the defendant is embarked on a course of action designed to deprive plaintiff and others of their rights of free speech, but no facts are referred to that could give support to the

charge other than the present arrest and seizure following on the heels of an arrest and seizure in Nassau County.

■ The point presented is that as a matter of constitutional principle no print of a film may be seized until after there has been an adversary hearing (see, e. g. Metzger v. Pearcy, 7th Cir. 1968, 393 F.2d 202), and that, in consequence the use of the search warrant statute to support the seizure of the present film in aid of the prosecution under Penal Law § 235.05 is constitutionally impermissible conduct which may and must be enjoined. It is not contended at this stage that there was any departure from the strict procedures enjoined by Code of Criminal Procedure § 791 et seq. It is not contended that the statute as applied to matters other than books and films is open to any challenge. And it is not at this stage argued that the evidence on which the warrant issued failed to meet statutory or constitutional requirements if it can ever be lawful to seize a film on an *ex parte* showing that it is obscene within the meaning of Penal Law § 235.00, subdivision 1, and is in course of a guilty use described in § 235.05. The proposition is that any *ex parte* seizure of a film is a forbidden prior restraint because it utterly arrests the further publication of that film to the innumerable patrons of the theater who would otherwise have seen it. It is— it is argued—by its very nature not an evidentiary but a communication-stifling seizure, and it is, therefore, it is urged, forbidden by the settled principle that the power to search for and seize contraband and evidence cannot be used against books or films in such manner that it operates as a prior-restraint upon their publication or as a suppression of their publication before there has been an adversary hearing on the obscenity issue. Marcus v. Search Warrants, 1961, 367 U.S. 717, 724, 729–730, 736–738, 81 S.Ct. 1708, 6 L.Ed.2d 1127; Quantity of Copies of Books v. Kansas, 1964, 378 U.S. 205, 210, 84 S.Ct. 1723, 12 L.Ed.2d 809; Mishkin v. New York, 1966, 383 U.S. 502, 512–514, 86 S.Ct. 958, 16 L.Ed.

2d 56; Evergreen Review, Inc. v. Cahn, E.D.N.Y. 1964, 230 F.Supp. 498; United States v. Brown, S.D.N.Y.1967, 274 F.Supp. 561, 565; United States ex rel. Mishkin v. Thomas, S.D.N.Y.1968, 282 F.Supp. 729, 740–742; People v. Rothenberg, 1967, 20 N.Y.2d 35, 281 N.Y.S. 2d 316, 228 N.E.2d 379; People v. Kozak, N.Y.Co.1968, 56 Misc.2d 337, 288 N.Y.S. 2d 692. Plain it certainly is that the state can explicitly halt the dissemination of books and films only after a judicial determination in an adversary proceeding, Kingsley Books, Inc. v. Brown, 1957, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469, and that the procedure must be so designed that delays in court can not in real substance suppress the publication. See Freedman v. Maryland, 1965, 380 U.S. 51, 60, 85 S.Ct. 734, 13 L.Ed.2d 649.

■ Here, however, the substantive statute involved is as assuredly valid as a statute can be when it must be drafted in the light of the First Amendment. Mishkin v. New York, 1966, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; Ginsberg v. New York, 1968, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195; People v. G.I. Distributors, Inc., 1967, 20 N.Y. 2d 104, 281 N.Y.S.2d 795, 228 N.E.2d 787; see People v. Quentin, Nassau Co. 1968, 58 Misc.2d 601, 296 N.Y.S.2d 443; cf. Redrup v. New York, 1967, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515; Rabeck v. New York, 1968, 391 U.S. 462, 88 S.Ct. 1716, 20 L.Ed.2d 741; People v. Marzano, 3rd Dept. 1968, 31 App.Div.2d 52, 295 N.Y.S.2d 228; People v. Stabile, N.Y.Co.1969, 58 Misc.2d 905, 296 N.Y.S. 2d 815. As in the case of books, films may be found to be obscene and therefore unprotected by the First Amendment. *Cf.* Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 505–506, 72 S.Ct. 777, 96 L.Ed. 1098; Times Film Corporation v. City of Chicago, 1961, 365 U.S. 43, 49–50, 81 S.Ct. 391, 5 L.Ed. 2d 403; Jacobellis v. Ohio, 1964, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793; Freedman v. Maryland, 1965, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649. And, as the cited cases indicate, the nature

of films and their exhibition can authorize appropriate adversary procedures for halting in its incipiency an exhibition that will be criminal if it occurs, so long as the procedure provides "adequate safeguards against undue inhibition of protected expression."

■ It follows that if the present film is found obscene, its exhibition will have been criminal misconduct and punishable if it occurred in the circumstances set out in Section 235.05 and if guilt is adequately proved at a trial. The State, however, must prove its case, and it cannot do so without proving the content of the film. The film, then, could well be both the "property used * * * as the means of committing [an alleged] crime" and the "property constituting evidence of [the alleged] crime," and, for purposes of the present case, it must be assumed that the Criminal Court Justice had probable cause to believe that the film was obscene by the statutory definition and was at the place of search, and that its exhibition was criminal. *Cf.* Code of Criminal Procedure §§ 792, 793. As the case has been presented, ·there can be no contention here that the film was such that a magistrate could not constitutionally find that there was no probable cause to believe it obscene. Contrast Redrup v. New York, *supra*, 386 U.S. at 771, 87 S.Ct. 1414.

■■ The seizure in this case was the minimum seizure needed to support prosecution of the precise alleged offense. Contrast People v. Rothenberg, *supra*, 20 N.Y.2d at 39, 281 N.Y.S.2d 316, 228 N.E.2d 379. Its legality flows from the substantive validity of the obscenity statute, and the constitutional validity of the New York search warrant statutes in the generality of the instances of their application. The substantive and the procedural statutes can not be so joined in any particular application that they become an instrument for suppressing constitutionally protected communication, nor can the issue of whether or not they have been so used ever be insulated from appellate and—ultimately—federal

scrutiny of the constitutional sufficiency of the evidence of obscenity to establish that the utterance is not entitled to First Amendment protection. But that does not signify that a federal court is authorized to interfere in advance with an orderly state prosecution on the ground that the state may err and the federal authority ought, therefore, to decide the matter in the first instance. Douglas v. City of Jeanette, 1943, 319 U.S. 157, 163–164, 63 S.Ct. 877, 87 L.Ed. 1324; see Dombrowski v. Pfister, 1965, 380 U.S. 479, 484–486, 85 S.Ct. 1116, 14 L.Ed.2d 22; cf. City of Greenwood, Miss. v. Peacock, 1966, 384 U.S. 808, 828–830, 86 S.Ct. 1800, 16 L.Ed.2d 944. Jurisdiction, here, is rested on the Civil Rights Act, 42 U.S.C. § 1983, and, indeed, the federal jurisdiction can be invoked to stop a proceeding in the state court only when the very maintenance of, and the proceedings in, the state case are themselves shown, *prima facie* at least, to constitute an invasion of a constitutionally protected interest. No approach to such a showing is made in the present case.

It is argued that seizure of a print of film is, like the seizure of an entire edition of a book or the total local stock of a book, a forbidden prior restraint since no adjudication of obscenity in an adversary hearing preceded seizure. It is not fairly possible to deny that Metzger v. Pearcy, 7th Cir. 1968, 393 F.2d 202, is framed verbally as such a holding; it dealt, too, with four seizures that may well have shut off all showing of the film in Marion County if not in Indianapolis. Yet the criminal prosecutions were not enjoined and the exhibitor was required to keep one of the returned prints available for use in the several prosecutions that had been initiated. Tyrone, Inc. v. Wilkinson, 4th Cir. 1969, 410 F.2d 639, appears again to be a nominal holding that the narrowly precise seizure of a single print upon a well founded warrant in aid of an obscenity prosecution fell afoul of Quantity of Books v. Kansas, *supra*. Yet, again, the Court declined to enjoin the prosecution, treated the case as one that dealt only

with an instance of executive action under a statute that was not genuinely challenged for general procedural invalidity, and did not suppress the seized film but only directed its return subject to the requirement that the exhibitor keep a copy available to the state for use in preparing and trying the criminal case.

With deference, the two cases overlook the central emphasis of the line of cases culminating in Quantity of Copies of Books v. Kansas on the presence in the cases of a manifest abuse of search and seizure procedures as a mode of stifling communication. Moreover, the result of Metzger v. Pearcy and *Tyrone*—continuance of the prosecutions with authorization to use in evidence the very film found to have been illegally seized—is an index that the Courts reduced the whole issue to the level of a motion to restore the custody of the film to the exhibitor upon the giving of adequate assurance of its availability for use in evidence at the criminal trial. Such relief, it would seem, is appropriately available in the state court if and to the extent that the seized film is needed to continue dissemination of its lesson, or, to put it another way, if there is ground to apprehend that retention (as distinguished from seizure) of the film could operate as a prior restraint or a suppression of constitutionally significant scope. Indeed, the motion is proper if the District Attorney's retention of the film could impose a mere inconvenience on the defendant that could be averted by returning the film without sacrifice of its availability as evidence. The First Amendment background functions in such a context only to assure that the disposition of such a motion is not a matter of judicial discretion but of firmly founded legal right if the evidence is that retention of the film may materially stifle the utterance of its content before there has been any adjudication of obscenity in an adversary hearing. See Code of Criminal Procedure, § 804, indicating that property lawfully seized is under the control by its order of the court in which the case is to be tried.

In this case, for all that appears, many prints are available to the lessor of the film, and through him to the plaintiffs, who can hardly be expected to go on with their lease without a copy of the film to show. Nor is it clear that the film will not be returned so long as its intact evidentiary availability is assured; in fact it would not be impossible to suppose that the two Counties might find that one print sufficed for both Counties.

It appears, too, that the plaintiffs' exhibition of the film ceased before the seizure and, possibly, as a consequence of the Nassau County arrest. Certainly the mere existence of a valid criminal statute punishing the exhibition of obscene films must tend to cow the exhibitor required to decide whether or not a film is utterly devoid of social value; and surely evidence of vigorous enforcement of such a law can tend to produce a bias toward widespread exhibitor rejections of the marginal film. But that effect of all criminal statutes is of their essence, and it explains the insistence that criminal laws be lucid and not vague or overbroad, particularly where the conduct they prohibit closely borders on other conduct that in its better manifestations is positively encouraged, and clothed with immunity. But against the inhibition arising out of vigorous law enforcement there can be no relief so long as it is the law that narrowly drafted obscenity statutes are valid.

Thus no substantial federal question is now presented. Nothing in the current history of New York's administration of its obscenity law suggests that plaintiffs' constitutional rights are not in good hands or will be to any degree jeopardized by the state court proceedings. It follows that the convening of a three judge court would not be in order. Swift & Co. v. Wickham, 1965, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, even if—and that is more than doubtful—the case in its present shape could be considered fairly to bring into issue in the particular instance of

attempted enforcement a state statute being enforced in exemplification of a state-wide policy. See Moody v. Flowers, 1967, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed.2d 643; Spielman Motor Sales Co. v. Dodge, 1935, 295 U.S. 89, 94, 55 S.Ct. 678, 79 L.Ed. 1322; Tyrone, Inc. v. Wilkinson, *supra,* 410 F.2d at 643–644.

The facts have not been fully presented and they have been found, to the extent that the record permits, as set forth above. While it is unlikely that they can be much expanded on the points relevant in this Court by a trial, paragraph 5 of the amended complaint, although very mildly, could be taken to suggest that, as locally applied by the particular defendant, the statutes have been made a means of suppressing constitutionally protected speech. That prevents, at this stage, the granting of the Attorney General's cross-motion for judgment.

Accordingly, it is

Ordered that plaintiffs' motion for the convening of a three-judge court, and for an order directing return of the film, enjoining prosecution of the criminal charge and declaring Penal Law § 235.05 invalid is denied in all respects and the defendant's cross-motion for judgment is denied.