Richard W. Wallace, J.
These proceedings are brought by petitioner, a sublandlord to recover possession of the retail store premises known as 224 West 42nd Street in Manhattan. Proceeding under subdivision 5 of section 711 of the Real Property Actions and Proceedings Law petitioner charges that respondents, an original undertenant and an assignee respectively, were and are using and occupying the premises for an illegal trade or business, in this instance for the continuous sale and distribution of obscene material in violation of section 235.05 of the Penal Law, [as it was at all times pertinent here], petitioner demands re-entry and a holding that the present lease is void (Real Property Law, § 231).
Petitioner proved that respondents Carroll and Palace Books, Inc. (“ Palace ”) took occupancy under written subleases on or about March 1,1966, until they assigned and subleased to White-way Books, Inc. (“ Whiteway ”) with the written consent of petitioner and the overlandlord on February 23, 1968. Prior to the transfer of possession employees of Palace amassed eleven convictions in the Criminal Court for violating the obscenityVtatute. During the subsequent period from February, 1968 through September, 1969 there were six like convictions of Whiteway’s employees.
It was urged that the present ownership and management of Whiteway underwent a complete change in September, 1969, and that the capital stock changed hands under a bill of sale dated September 8,1969. Whiteway’s present ownership, albeit somewhat anonymously as will subsequently appear, now argues that the transgressions of predecessors do not taint them.
Taken as a whole, the proof showed customary and habitual illegal use of the premises (Remedco Corp. v. Bryn Mawr Hotel Corp., 45 Misc 2d 586), i.e., regular sale of obscene materials. Wholly distinguishable are cases involving isolated illegal acts (U. C. L. Realty Co. v. Brown, 193 Misc. 801; Florgus Realty Corp. v. Reynolds, 123 Misc. 161 and Lituchy v. Lathers, 35 Misc 2d 556).
Petitioner’s proof of continuous illegal use went considerably beyond the record evidence of criminal convictions. Six police officers testified to seizures of hard core pornographic material, under warrant and incidental to arrests. Representative of this seized material regularly offered for sale was Exhibit 21, consisting of 48 separate photographs, clearly indecent and obscene, of males and females in acts of sexual foreplay and intercourse of manifold variety. Not mere nudity was depicted in these photographs, which is not now proscribed (see People ex rel. *224 Arcuri v. Finkelstein, 114 N. Y. S. 2d 810; People v. Gonzales, 107 N. Y. S. 2d 968; People v. Stabile, 58 Misc 2d 905), but provocative lewd and lascivious intercourse, which is. (People v. Fellerman, 243 App. Div. 64, affd. 269 N. Y. 629; People v. Quentin, 58 Misc 2d 601.) The critical distinction between photographs of the naked body, even in suggestive poses, and actual depiction of acts of sexual intercourse has been graphically clarified by the California Supreme Court in People v. Noroff (67 Cal. 2d 791, 797) which notes that while the United States Supreme Court ‘‘ has decided that the judiciary cannot engage in the task of placing legal fig leaves upon variegated presentations of the human figure,” sexual activity itself is quite another matter.
By way of defense, respondents seek to cloak their activities in the First Amendment and argue that obscenity is too vague a concept for judicial recognition under rapidly liberalizing community mores. The contention has scant merit. These respondents ‘ ‘ were engaged in the business of purveying * * * graphic matter * * * to appeal to the erotic interest of their customers. They were plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect. ’ ’ Warren, Ch. J., concurring in Roth v. United States (354 U. S. 476, 495-496). Respondents do not come into court as the champions of a brave new permissive sexual philosophy, but solely as salesmen “ against a background of commercial exploitation of erotica solely for the sake of their prurient appeal.” (Brennan, J., in Ginzburg v. United States, 383 U.S. 463, 466).
Whether the first transfer of occupancy and control of the premises from Palace to Whiteway was genuine or sham is unnecessary to decide, inasmuch as the continuous illegal use by each separately will sustain a final judgment against both. In passing it is noted that John Carroll of Palace was authorized and did sign a rent check from Whiteway to petitioner as late as May 7, 1969, and that Palace held itself out to the public as the occupant considerably after the supposititious transfer of control. As an assignor of the underlease, Palace was in any event a proper party to these proceedings (220-228 Brook Ave. Corp. v. Zaft, 151 Misc. 231).
As to Whiteway itself, this respondent offered evidence of a sale of all its capital stock to “ new management ” who ask that they be regarded as wholly shriven of the evil past. Absence of any arrests or convictions after September 8, 1969, the date of the purported transfer of ownership by sale of stock, is urged as the talisman of the new regime.
*225 The difficulty with this stance is that this last alleged transfer was patently sham. Respondent had the burden of demonstrating its genuine character, in view of the presumption that ownership continues in the absence of proof to the contrary. As the Court of Appeals said in Wilkins v. Earle (44 N. Y. 172, 192): “ There is a legal presumption of continuance. A partnership once established is presumed to continue * * * So of ownership ’ To meet that burden ‘ ‘ new ’ ’ Whiteway offered the testimony of Mr. Ferrari, which at the end left much to be desired.
This witness presented himself as the living embodiment of how to succeed in business without really trying. One day he was a mere salesman; the next day or so following the stock sale he was named the president of the organization. All Mr. Ferrari knows of his mysterious benefactor was his first name, ‘ ‘ Ted; ’ ’ he did not know the identity of any members of the board of directors, nor any other officers, nor the whereabouts of the corporate records, nor the name of any beneficial owners of the stock except a holding corporation. At the end of his testimony Mr. Ferrari’s true role was clear; he was not the chief executive of a business but a mere dummy to shield the identity of others.
Mr. Ferrari’s status was only one indicia of the illusory character of the transfer. Others were (1) the absence of any significant cash down payment, with the entire purchase price payable out of installments; (2) the fact that the transfer was not absolute but contingent upon the successful outcome of this very lawsuit; and finally (3) the peculiar form of the transaction itself. With respect to the last facet, this purported sale of all issued and outstanding stock of WHiiteway was effected by a Blumberg form of bill of sale. No attempt was made to transfer the stock certificates themselves. None of the closing papers, for aught that appeared dealt with the nonproduction of those certificates; nor was there any indemnification of the transferee by the alleged transferor as to prior hypothecation or sale, an obvious incident of a genuine arm’s length transaction.
For the foregoing reasons, final judgment is directed in favor of petitioner. Thirty days’ stay of warrant on payment of use and occupation equal to leasehold rent.