OPINION OF THE COURT
Peter Tom, J.
The epidemic of "crack” has saturated this city with such intensity that it was inevitable to reach housing litigation involving real properties being utilized for the sale and use of this deadly drug.
The petitioners brought on this summary proceeding pursuant to RPAPL 715 for an order of eviction of all occupants of a three-story brownstone located at 124 Manhattan Avenue, New York, New York, as being a "crack den.”
RPAPL 715 permits an owner of real property or a tenant of a demised premises which is located 200 feet from real property used in whole or in part as a "bawdy house” or for other illegal activities to commence summary proceeding as if he or she is the owner of the illegally used premises to evict the tenant for such illegal activity if the owner has failed to do so on five days’ written notice.
This statute authorizes neighbors to take action to remove a tenant from premises used for illegal purposes when the owner has failed to do so.
The court in its research of the issues in this case did not find one reported case involving a neighbor-initiated summary proceeding against a tenant for illegal activities under RPAPL 715.
The 26 petitioners in this proceeding are concerned homeowners and tenants who live within 200 feet of the premises in issue. It is their contention that this building is being used for drug sales and drug-related activities. The illegal activities have attracted large numbers of drug buyers and users into their neighborhood and disrupted a once quiet block of brownstones and turned the area into a drug market.
The premises in issue is a one-family brownstone once owned by the late Minnie DeCosta Hylton who died intestate several years ago. Her son, Abel DeCosta, never took title to the premises. He later also died intestate on November 2, 1984.
Since there were no relatives of the DeCostas who can establish their rights to receive letters of administration of the two estates, the Public Administrator of New York County, *761 Bruno Cappellini, was appointed to receive letters of administration from the Surrogate’s Court for both estates.
The Public Administrator was given notice of the illegal drug activities in the subject building on May 31, 1986. The Public Administrator failed to take any action to cure this condition which prompted petitioners to bring on this proceeding.
This summary proceeding was originally commenced in the Surrogate’s Court and the Surrogate, in her discretion, transferred the proceeding to the Housing Court pursuant to article VI, § 19 (h) of the NY Constitution.
The Public Administrator is a named respondent in this proceeding pursuant to RPAPL 715 (1), however, he joins in the relief sought herein by the petitioners.
There are three other named respondents and "John and Jane Does” whose names are unknown to petitioners. The only occupant to appear in this proceeding is respondent Frederick Reeves. All other respondent occupants have defaulted in this proceeding.
The evidence in this case clearly shows that the premises in issue is being used for drug-related activities.
Police Officer Armando Baquero, who is assigned to the Manhattan North Narcotics Division, testified that he has participated in four court-ordered searches of the building in issue since January 1986. The last search was conducted in July. On each occasion police officers found tinfoil with white powder, cocaine, plastic vials and drug paraphernalia including butane canisters and glass pipes, used for the free-basing of cocaine, throughout the premises. There were arrests made on each occasion and the suspects were charged with possession of a controlled substance. On each search arrests were made of different individuals.
The searches were conducted by a squad of at least eight police officers and agents under search warrants. Officer Baquero testified that there must be at least two drug purchases made in the premises sought to be searched before a warrant may be issued by a court of competent jurisdiction. He has no doubts that the premises is being used for the sale of drugs and related activities.
Petitioner Joseph M. Simplico, who lives two houses from the premises in issue, testified that after the death of Abel DeCosta in 1984 there was a tremendous increase in the number of people who would enter and leave the subject *762 building at all times of the day and night. During a night in August 1986, Mr. Simplico counted 33 individuals entering and leaving the premises in a period of two hours. On September 27 he assisted the process server in serving process in front of this building and he counted 27 people who came out of the premises. He further testified that at least seven to eight individuals have rung his doorbell during the past six months and asked if drugs were sold there. He observed these individuals to ultimately enter the premises in issue after their departure. Mr. Simplico testified that he has observed people of different age groups and different class status entering and leaving this building. He has seen people come in limousines. He also frequently sees crack vials on the sidewalk and basement area near this building.
Mr. David Livingstone who resides in the building across the street from this brownstone testified that in the past year or so he has observed many people entering and leaving the premises in issue at short intervals of time. His son was offered cocaine by an individual in the neighborhood who later went into the building in issue.
The drug activities have also brought into the neighborhood prostitutes who would stay around the stoop area of this building. Mr. Simplico and Mr. Livingstone have both been propositioned by them.
Mr. Harrison Snell who is an attorney and represented Laura Philips, the temporary administratrix of the estate of Abel DeCosta, visited the subject premises in August 1986. The reason for his visit was to have the building appraised for a potential buyer. He was accompanied by police officers from the Special Narcotics Division because he feared for his own safety since this building was known to be a "crack house.” They only gained access to the room of respondent Reeves in the building. Mr. Snell testified that a mattress was turned over in Mr. Reeves’ room and he saw a few hypodermic needles underneath. Mr. Snell further testified that when he represented Laura Philips he received numerous phone calls from the Special Narcotics Unit complaining of the drug activities in the building.
Mr. Jorge DeJesus Guttlein who lives in the neighborhood testified that he observed children around the age of 10 or 11 years old entering and leaving this building. His wife has been harassed by individuals in the neighborhood. He has observed individuals with blank looks and individuals who are rowdy wandering the neighborhood.
*763 Respondent Reeves who is an occupant of the subject brownstone testified that he rented the premises from the late Abel DeCosta in January 1983. He concedes that this building is being used for drug sales and related activities but he denies having any involvement with the illegal activities. He claims that the other occupants in the building are involved in drug trades.
The evidence in this case does not support his contention but rather to the contrary.
Respondent Reeves is a convicted felon with numerous convictions including assault, attempted murder and possession of a controlled substance. He testified that he lets people into the building who are looking for other occupants. Mr. Reeves testified that he lets as many as 50 people into the building in a given day. He has been letting them in since March 1985 and knows that these people are there to make drug transactions.
The court finds that respondent Reeves is not an innocent occupant of this building but rather is an active participant of the illegal activities there.
Mr. Snell testified that while he was in Mr. Reeves’ room in August he was informed by Mr. Reeves that he rented out rooms in this building to the occupants. Respondent Reeves, by illegally renting this building to drug dealers and users to practice their illegal trade and permitting and allowing drug buyers to enter and carry on drug transactions in the premises, is an active participant of the illegal activities being committed there.
Further, there was evidence implicating him directly with drug activities when hypodermic needles were found in his room. He testified that the needles belong to his girlfriend who is a diabetic and uses the needles for insulin injections. The court dismisses this excuse for the simple reason that if the needles were for legitimate use why then were they hidden under a mattress in his room.
The court further questions the legitimacy of Mr. Reeves’ occupancy of this building. He has no proof to support his claim that the building was leased to him by the late Abel DeCosta. There was no lease agreement and he has no proof to show that he ever paid rent for the premises. Laura Philips and the Public Administrator never gave permission to him to occupy this building. Mr. Reeves claims that he paid rent to Laura Philips but she denies this. Ms. Philips testified that *764 respondent Reeves has never paid rent to her nor has he ever attempted to pay rent to her. The court finds her testimony credible. The court further finds that the other occupants took possession of the premises by permission of Mr. Reeves.
This building is not subject to either rent stabilization or rent control.
Officer Raquero testified that this building is filthy, with garbage strewn throughout the floors, and in such disrepair that he does not believe anyone lives there. He believes the building is used strictly for drug transactions.
A summary proceeding commenced pursuant to RPAPL 715 is based on a violation of law and not a violation of a lease agreement and therefore it is not necessary to first terminate the lease. Such proceeding may be brought without regard to waiver, conditional limitation or termination clauses in the lease (Murphy v Relaxation Plus Commodore, 83 Misc 2d 838; Nederlander Theat. Corp. v C.A.M.S. Hotel Corp., NYLJ, Nov. 16, 1981, at 7, col 1 [App Term, 1st Dept]).
The burden of proof upon petitioners under RPAPL 715 does not require proof of commission of specific illegal acts but rather proof of the ill repute of the demised premises or those resorting thereto shall constitute presumptive evidence of unlawful use. (City of New York v Goldman, 78 Misc 2d 693; RPAPL 715 [1].) It is sufficient that the acts and conduct complained of warrant an inference of the illegal purposes for which the premises are being used.
In this proceeding both parties concede that the premises are being used for illegal drug activities.
Courts do not favor forfeiture of tenancies if there exists any possible resolution to resolve the dispute. (See, 220 W. 42 Assocs. v Cohen, 60 Misc 2d 983.) However, this concept cannot be applied in the instant proceeding.
"Crack,” which is becoming the Nation’s most widely used illegal drug due to its low costs and high potency has become a scourge. This drug which is highly addictive has caused an alarming increase in crimes, including burglaries, robberies and other felonies. These crimes are committed by addicts to feed their insatiable appetites. This increase in crime has prompted more Judges to be assigned and appointed to the Criminal Court to assist in alleviating the case congestion. This drug has been known to cause violent reactions of users *765 leading to chilling crack-related homicides often seen in the headlines of our daily newspapers.
Drug abuse in a community threatens the very fabric of society by undermining social morals and values, and affecting its citizens and eroding its neighborhoods. Drug abuse very often reaches vulnerable children because they are easy "targets.”
The use of real property for illegal purposes such as the sale and use of illegal drugs if unchecked will flourish and irreparably affect the entire neighborhood by disrupting its tranquility and increasing the crime rate in the area. If this condition is allowed to continue, residents will abandon the neighborhood and the criminal elements will take over. This will lead to the degeneration of the neighborhood.
The court agrees with petitioners’ argument that the only effective solution to save this neighborhood is to vacate the entire building and get rid of all its drug dealers and users. To effectively remove a cancer, it must be completely cut out. The actions by the police department in raiding the premises and making numerous arrests have not stopped or even reduced the illegal activities in the premises. The court must now permanently close this "crack house.”
Petitioners in their presentation of this case have met their burden of proof pursuant to RPAPL 715 to warrant the granting of the relief sought herein.
Based on the foregoing, the petition is granted and a warrant shall be issued forthwith directing the removal of all persons in possession of the premises in issue. The premises shall thereafter be secured by lock and no person shall enter the premises without written permission of the Public Administrator or by order of this court. The Police Department of the City of New York is requested to enforce this order upon the request of any of the petitioners or the Public Administrator in this proceeding.
The court further awards costs, disbursements and attorney’s fees in favor of the petitioners. The award shall be a lien on the premises and is to be paid from the proceeds of the sale of the premises when sold.
Submit judgment.