OPINION OF THE COURT
Eileen Bransten, J.
At the request of the New York County District Attorney’s Office, petitioner landlord, 1165 Broadway Corp. (hereinafter Petitioner), commenced these four summary holdover proceedings against the above-named respondent tenants (hereinafter Respondents) pursuant to Real Property Law § 231 (1) and RPAPL 715 (l),[1] on the novel grounds that respondents were utilizing the commercial premises identified in each petition for the illegal manufacture and sale of counterfeit trademark apparel and sportswear.
Petitioner seeks possession of different rooms located at 1165 Broadway, New York, New York, after police officers purportedly recovered counterfeit goods in each premises valued in excess of $1,000 upon the execution of .separate search warrants. Petitioner asserts that Respondents’ possession for sale of said counterfeit trademark items is an illegal trade, manufacture, or business which renders the leases between the parties void pursuant to Real Property Law § 231 and which entitles petitioner to immediate possession in this summary proceeding instituted pursuant to RPAPL 715.

Applicability of Real Property Law § 231 (1) and RPAPL 715 (1)

Now, in this motion to dismiss each petition, all four respondents appear by the same attorney who submits that the Legislature did not intend Real Property Law § 231 (1) and RPAPL 715 (1) to be utilized when the allegations are that a premises is being used for the illegal manufacture and sale of counterfeit trademark goods. Respondents maintain that the use of Real Property Law § 231 (1) and RPAPL 715 (1) upon *941 such grounds would be an expansive and impermissible application of these statutes, asserting that these statutes should be applied only where premises are being utilized to promote social and moral wrongs dangerous to the health or safety of other tenants in a given building and/or the neighborhood at large.
It is true that many courts have recognized RPAPL 715 (l)’s vital importance as a tool in the protection of owners, tenants and entire neighborhoods from the dangers of illegal activity such as drug dealing, prostitution and gambling.[2] A reading of the statute, however, reveals that its application cannot be limited to only those illegal businesses which detrimentally impact on the quality of life in a given building or neighborhood.
Real Property Law § 231 (1) is a substantive statute which defines instances when a lease can be treated as void. "Whenever the lessee or occupant other than the owner of any building or premises, shall use or occupy the same, or any part thereof, for any illegal trade, manufacture or other business, the lease or agreement for the letting or occupancy of such building or premises, or any part thereof shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied.” (Real Property Law § 231 [1] [emphasis added].)
RPAPL 715 (1) is both a substantive and procedural statute which grants conditional standing to various interested individuals and enforcement entities[3] to maintain a summary proceeding for the recovery of real property where said prop *942 erty is: "used or occupied in whole or in part as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade, business or manufacture. ” (RPAPL 715 [1] [emphasis added].) The language in both Real Property Law § 231 (1) and RPAPL 715 (1) is clear and unambiguous in proscribing "any illegal trade, manufacture or business” (Real Property Law § 231 [1]) without reference to the moral turpitude of any given conduct or the impact of such conduct on other tenants or on a neighborhood. Indeed, neither Real Property Law § 231 (1) nor RPAPL 715 (1) places restrictions or qualifications on the term "any illegal trade, business or manufacture” (RPAPL 715 [1]) in its respective text.
The intent or purpose of a statute must be derived from the plain meaning of the words and may not be declared by any other construction where the language of the statute is clear and unambiguous. (See, Van Amerogen v Donnini, 156 AD2d 103, 105-106 [3d Dept 1990] [citing Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675 [1988].) Accordingly, in interpreting the meaning of an unambiguous statute, legislative intent need not be scrutinized. (Van Amerogen v Donnini, supra, at 105-106; see, McKinney’s UnCons Laws of NY, Book 1, Statutes § 76.)
The proscription against the use of a premises for "any illegal trade, manufacture or business” found in both Real Property Law § 231 (1) and RPAPL 715 (1) is plain. It certainly includes any enterprise operated in violation of the Penal Law. In the within matters, petitioner has alleged that respondents are utilizing their commercial premises in violation of Penal Law § 165.72, known as trademark counterfeiting in the second degree, a class E felony.[4]
In 1992, the Legislature added the crimes of trademark counterfeiting to the Penal Law. (See, Penal Law §§ 165.70- *943 165.74.) In his Practice Commentaries, William C. Donnino notes that: "[The Legislature] believed that prosecution of those who specialize in fraud by the use of counterfeit trademarks would be facilitated by creation of a crime specifically tailored to cover such conduct.” (Donnino, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 165.70, 1995 Pocket Part, at 105.) Notwithstanding the fact that the Legislature has specifically outlawed trademark counterfeiting, respondents ask this court to ignore the Penal Law and substitute its own tailored definition of illegality based on the impact a given activity has on other tenants or on the quality of life in a given neighborhood. Respondents’ argument is clearly misplaced.
While this court recognizes that the forfeiture of tenancies is generally disfavored (see, 220 W. 42 Assocs. v Cohen, 60 Misc 2d 983, 985-986 [App Term, 1st Dept 1969]), contrary to Respondents’ contention, use of Real Property Law § 231 (1) and RPAPL 715 (1) to terminate a tenancy used for the illegal manufacture and trade of counterfeit goods would not constitute an expansive application of these statutes. By their very terms, these statutes were specifically intended to address any illegal business, trade or manufacture and should not be interpreted to arbitrarily exclude those illegal businesses which fail to directly impact on the health, morals, welfare or safety of the public.[5]
Although this court finds that these statutes are specifically applicable to the facts alleged herein, the potential reach of these statutes is not as broad as Respondents would contend. There is a distinction between the illegal use of a premises which violates Real Property Law § 231 (1) and RPAPL 715 (1) and the commission of illegal acts within a premises which do not. To present a valid cause of action under these statutes, a premises must be used for an illegal trade, business or manufacture.
*944 The words "business,” "trade” and "manufacture” themselves present a limitation to the potential reach of Real Property Law § 231 (1) and RPAPL 715 (1). For example, the personal use of illegal drugs within a premises, even if habitual and customary, does not constitute an illegal use of that premises for purposes of Real Property Law § 231 (1) and RPAPL 715 (1) because such conduct does not amount to a commercial activity or enterprise.
Similarly, the requirement that a premises be "used” for illegal business activity also presents a significant limitation to the reach of these statutes because the "use” of a premises imports not an isolated act but conduct with some measure of continuity. (See, 190 Stanton v Santiago, 60 Misc 2d 224 [Civ Ct, NY County 1969].) Therefore, an isolated use of a premises even in the commission of the most heinous of crimes, such as murder or rape, would not constitute an "illegal use” of a premises for purposes of these statutes.
On the other hand, it is clear that any commercial enterprise operating and utilizing a premises in violation of the Penal Law is an "illegal” business which subjects the lessee of the premises to eviction proceedings under Real Property Law § 231 (1) and RPAPL 715 (1) upon proof that the tenant engaged, or even acquiesced in said illegal use. (See, Lloyd Realty Corp. v Albino, 146 Misc 2d 841, 843 [Civ Ct, NY County 1990].)
Indeed, although these statutes have been typically applied to recover premises utilized for prostitution, gambling and narcotics, they have also been applied to recover premises used for other illegal enterprises, including the storage and distribution of fireworks in violation of the Administrative Code of the City of New York (Tsang Realty v Sepulveda & Nunez, index No. L&T 109064/94 [Civ Ct, NY County 1994]), the sale and distribution of obscene material in violation of Penal Law § 235.05 (Cohen v Carroll, 63 Misc 2d 222 [Civ Ct, NY County 1970]), the operation of a lodging or rooming house in violation of the former Tenement Housing Law and the current Multiple Dwelling Law (Saportes v Hayeck, 111 Misc 620 [App Term, 1st Dept 1920]; 47 E. 74th St. Corp. v Simon, 188 Misc 885 [App Term, 1st Dept 1947]), and the selling of liquor in violation of the National Prohibition Act (Matter of Elmore v Berti, 128 Misc 74 [NY City Mun Ct 1926]).
Furthermore, nothing in the legislative history of RPAPL 715 (1) would warrant the restrictive construction Respondents *945 advocate.[6] In 1868, the Legislature first passed an amendment to the Revised Statutes of the State of New York, title 10, chapter 8, part 3, to add section 55. That statute, since referred to as the "bawdy-house” law, provided that the owner of "any house or other real property * * * used or occupied as a bawdy house, or house of assignation for lewd persons” could apply for a "warrant of dispossession.” (L 1868, ch 764, § 55.) In 1880, the statute was amended and placed in the Code of Civil Procedure as section 2231 (4). The revised statute provided that the landlord could remove a tenant from property "where the demised premises, or any part thereof, are used or occupied as a bawdy-house, or house of assignation for lewd persons, or for any illegal trade or manufacture, or other illegal business.” (L 1880, ch 178.) There are no Bill Jackets from the period, and no comments available concerning the reason the additional language was added.
The statute remained virtually unchanged through amendments to the Code of Civil Procedure in 1885, which changed the statute’s designation to Code of Civil Procedure § 2231 (5), and through the addition of some additional language in 1913. In 1921, with the repeal of many sections of the Code of Civil Procedure, the "bawdy-house” law became part of the Civil Practice Act. Thus, Code of Civil Procedure § 2231 (5) became Civil Practice Act § 1410 (5). The substantive language of the statute, however, remained unchanged.
Through these years, the persons entitled to bring eviction proceedings in "bawdy-house” cases grew. At first, only the landlord could bring such an action (L 1868, ch 764, § 61). In 1880, the Legislature expanded the right to a neighbor of the premises (L 1880, ch 178, § 2237). In 1913, those within "200 feet” of the premises (L 1913, ch 448, § 2237), another tenant in the same apartment or tenement house, or a domestic corporation holding certification from the board of charities were authorized to institute a proceeding (Code Civ Pro § 2237, later Civ Prac Act § 1417). In 1939, agencies licensed by the State Board of Social Welfare were also included in the growing list of entities with potential standing to bring eviction proceedings under the "bawdy-house” law (Civ Prac Act § 1417).
*946 In all these cases, however, persons or entities other than a landlord could only initiate proceedings for summary dispossession if the illegal activity were for prostitution-related offenses, but only the landlord could commence actions involving other "illegal trades or businesses.”
In 1947, the Legislature provided, for the first time, that "any duly authorized law enforcement agency of the state * * * under a duty to enforce the provisions of the Penal Law” be added to the list of individuals or agencies authorized to bring civil suit for dispossession. (L 1947, ch 284, § 1417.) Significantly, at the same time, the Legislature expanded the right of neighboring tenants and designated agencies to bring an action for removal of a tenant who was using the premises to conduct "any illegal trade, business or manufacture”, and gave that right to law enforcement as well.
In the 1947 Bill Jacket accompanying the amendments to the statute is a recommendation for approval by the New York County Lawyers’ Association. The recommendation notes that the amendment "broadens the scope of the law” by including "not merely cases of lewdness, but also 'any illegal trade, business or manufacture’ ”. It then gives two examples: "gambling, or the surreptitious distillation of alcohol”. It also notes that the extension of the right to bring these actions to the police, who are " 'under a duty to enforce the Penal Law’ ”, and thereby allow them to "go into the civil courts and dispossess the offender” will assure "swifter enforcement” of the statute authorizing summary proceedings. The bill was introduced "at the request of the Mayor and the Police Commissioner of the City of New York”. A comment by the Association of the Bar of the City of New York notes that "the kind of trade, business or manufacture intended is not certain”. The bill passed the Legislature without modification.
In 1962, Civil Practice Act § 1410 (5) and § 1417 were moved to the newly created RPAPL, and numbered sections 711 (5) and 715, respectively. (L 1962, ch 312, § 21.) In 1976, the Legislature amended RPAPL 715, to grant to "any duly authorized enforcement law agency * * * under a duty to enforce * * * any * * * local law, ordinance, code, rule or regulation relating to buildings” the right to initiate a summary proceeding for eviction. (L 1976, ch 494, § 1.) The rationale for this amendment, according to the Assembly, was "to expand the powers of local housing code enforcement agencies to evict unlawful and offensive establishments on the basis of local building codes, ordinances and regulations.” A memorandum *947 from the Executive Director of the Law Revision Commission notes that, with the amendment, "the tenant’s behavior need not be illegal only under the Penal Law.”
Contrary to Respondents’ contention, nothing in the case law or legislative history prevents application of Real Property Law § 231 (1) and RPAPL 715 (1) to the facts herein. Indeed, a plain reading of the statute, the case law and the legislative history supports a nonrestrictive application of Real Property Law § 231 (1) and RPAPL 715 (1) to any illegal business, trade or manufacture. Accordingly, Respondents’ motion to dismiss the petition is denied because there is no basis to conclude that an illegal business involving sale and storage of counterfeit goods should not be covered by Real Property Law § 231 (1) and RPAPL 715 (1).
CONCLUSION
Based on the foregoing, the court finds that the petitions are sufficiently pleaded and state a valid cause of action under both Real Property Law § 231 (1) and RPAPL 715 (1).
By their very terms, both Real Property Law § 231 (1) and RPAPL 715 (1) were intended to address any illegal business, trade or manufacture and should not be interpreted to arbitrarily exclude those illegal businesses which (arguably) fail to directly impact on the health, morals, welfare or safety of the public. There is no basis in the case law or in the legislative history of these statutes that requires this court to determine that the alleged use of a premises for an illegal business is immoral or dangerous to neighboring tenants. Such concerns are best left to the Legislature and are often reflected in the promulgation of new penal laws and/or local ordinances which defines given conduct as illegal.
Both Real Property Law § 231 (1) and RPAPL 715 (1) proscribe any illegal trade, business or manufacture and, as such, it appears evident the Legislature intentionally failed to limit the scope of these statutes to particular illegal conduct. Therefore, the statutes, as drafted, can be applied to newly proscribed activities such as trademark counterfeiting.
[Portions of opinion omitted for purposes of publication.]

. Where a landlord/ tenant relationship exists, RPAPL 711 (5) also authorizes the maintenance of a special proceeding on the grounds that a premises has been used for "any illegal trade or manufacture, or other illegal business.”

. See, e.g., New York County Dist. Attorney’s Off. v Geigel, NYLJ, Dec. 27, 1991, at 24, col 6 (Civ Ct, NY County, Collazo, J.) ("this Court is especially concerned with the safety and plight of those tenants situated within the same building as the drug sellers. The Court recognizes that these tenants survive in daily fear of harassment, intimidation and physical assaults inflicted upon them by drug selling neighbors”); New York County Dist. Attorney’s Off. v Rodriguez, 141 Misc 2d 1050, 1052 (Civ Ct, NY County 1988, Tom, J.) (recognizing that the District Attorney’s eviction program which utilizes RPAPL 715 to evict drug dealers "is the progeny of the explosion of drug-related crimes which have overwhelmed the City of New York and have sent a wave of fear throughout the communities of our city”); Matter of Kellner v Cappellini, 135 Misc 2d 759, 765 (Civ Ct, NY County 1986, Tom, J.) (noting that the "use of real property for illegal purposes such as the sale and use of illegal drugs if unchecked will flourish and irreparably affect the entire neighborhood by disrupting its tranquility and increasing the crime rate in the area”).

. If a landlord or owner fails to bring or diligently prosecute a summary proceeding within five days of written notification that his or her premises is *942 being utilized for illegal purposes from any State licensed domestic corporation organized for the suppression of vice or any duly authorized enforcement agency of the State under a duty to enforce the provisions of the Penal Law (or of any State or local law, ordinance, code, rule or regulation relating to buildings), the eviction proceeding may be brought by said enforcement entity and the landlord or owner may be made a respondent subject to stiff civil penalties and attorney’s fees. (See, RPAPL 715 [1], [4].)

. "A person is guilty of trademark counterfeiting in the second degree when, with intent to deceive or defraud some other person or with the intent to evade a lawful restriction on the sale, resale, offering for sale, or distribution of goods, he or she manufactures, distributes, sells, or offers for sale goods which bear a counterfeit trademark, or possess a trademark knowing it to be counterfeit for the purpose of affixing it to any goods, and the value *943 of such goods, or trademark exceeds one thousand dollars.” (Penal Law § 165.72.)

. (Contra, Spira v Spiratone, Inc., 148 Misc 2d 787 [Civ Ct, Queens County 1990].) In Spira, the court concluded that the use of the premises as a church and place of public assembly could not be construed as an "illegal business.”
Although the court’s decision in Spira is soundly based on the fact that petitioner failed to cite any State, county and municipal laws, ordinances and regulations which proscribed such use, the court went on to opine that "to warrant a dispossession for illegal use there must be a violation of statutory law dealing with health, morals, welfare or safety of the public.” (Spira v Spiratone, Inc., 148 Misc 2d, at 789, supra, citing 2 Rasch, New York Landlord and Tenant—Summary Proceedings § 34.3 [3d ed 1988].)

. The court adopts the legislative history of RPAPL 715 (1) as aptly researched and presented in the amicus brief of the New York County District Attorney’s Office prepared by Assistant District Attorney Ralph Fabrizio and law intern Kathi Lang-Thorbes, a law student at Fordham University School of Law.